No. 24211.

DEAN S. OWENS *v.* RUBEN BROCHNER AND JOHN J. ROWE.
(474 P.2d 603)

Decided September 21, 1970.

PAUL A. MORRIS, WALTER L. GERASH, for plaintiff in error.

YEGGE, HALL and EVANS, RICHARD D. HALL, for defendant in error Ruben Brochner.

LAWRENCE M. WOOD, HUTCHINSON, BLACK and HILL, JAMES W. BUCHANAN, for defendant in error John J. Rowe.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

THIS matter is here for review on writ of error to the District Court of Boulder County. The parties are aligned here as they were in the trial court.

Owens, the plaintiff, filed a complaint against Dr. Brochner for malpractice on June 12, 1967, and joined Dr. Rowe as a defendant on March 6, 1968. The operation from which the complaint arose was performed April 27, 1965.

The lawsuit terminated in the trial court by the entry of a summary judgment in favor of the defendants based upon the two-year statute of limitations C.R.S. 1963, 87-1-6.

Admittedly, more than two years had elapsed between the date of the operation and the filing of the complaint. The question for our determination is whether the "cause

of action accrued" as of the date of the surgery as the trial court held, or when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the alleged negligence of the defendants. The second alternative is known as the "discovery rule." For the reasons set forth in this opinion we disagree with the trial court.

The only issue before us is one of law. Although other courts and law review articles have aligned Colorado with those jurisdictions applying the "discovery rule," the precise question before us has not previously been considered by this court.

A brief statement of the factual context within which the issue arises will suffice for our discussion.

The complaint alleged that on April 25, 1965, Brochner negligently diagnosed a malignant tumor in plaintiff's brain, and on April 27, 1965, performed unnecessary surgery to remove the tumor; that plaintiff was not aware of the professional negligence of Dr. Brochner until March or April, 1967, at which time he was informed of the true facts by "competent" doctors. The amended complaint, in which Dr. Rowe, a pathologist, was joined as a party defendant, alleged that on the date of the surgery he negligently diagnosed brain tissue to be malignant (Astrocytoma Grade II), when, in fact, it was normal.

The statute on which the trial court based its summary judgment, C.R.S. 1963, 87-1-6, in material part reads: "No person shall be permitted to maintain an action, whether such action sound in tort or implied contract, to recover damages from * * * any person licensed in this state or any other state to practice medicine * * * on account of the alleged negligence of such person in the practice of the profession for which he is licensed or on account of his failure to possess or exercise that degree of skill which he actually or impliedly represented, promised, or agreed that he did possess and would exercise, *unless such action be instituted within two years after such cause of action accrued.* (Emphasis added.)

When does a cause of action accrue in a professional negligence case? Our alignment with the "discovery" jurisdictions, as noted above, is the result of two prior decisions. *Davis v. Bonebrake,* 135 Colo. 506, 313 P.2d 982, and *Rosane v. Senger,* 112 Colo. 363, 149 P.2d 372.

In *Rosane,* the doctor, who allegedly left a sponge in the plaintiff after surgery, pleaded the statute of limitations. We there stated:

"* * * Under the facts pleaded it was impossible for plaintiff to sue within the limitation and it is a recognized maxim that the law requires not impossibilities. A legal right to damage for an injury is property and one can not be deprived of his property without due process. There can be no due process unless the party deprived has his day in court and if without his fault his debtor conceals from him his right until a statute deprives him of his remedy he is deprived of due process. It is also an ancient maxim of the common law that 'Where there is a right there is a remedy.' What a mockery to say to one, grievously wronged, 'Certainly you *had* a remedy, but while your debtor concealed from you the fact that you had a right the law stripped you of your remedy.' "

There is no difference, in our view, as far as the wronged plaintiff is concerned, whether the negligence of the defendants was *concealed* or for some *other* valid cause the plaintiff failed to learn of the negligence, unless, of course, the plaintiff, in the exercise of reasonable diligence, should have known of the negligence at the time of its occurrence.

Thirteen years after *Rosane* this court considered the problem again in *Davis v. Bonebrake, supra.* In *Bonebrake* the complaint was filed two years and two months after an operation on the plaintiff. A sponge was left in the plaintiff's abdomen. The defendant admitted the operation but, as a first defense, denied any negligence. As a second defense the defendant asserted the statute of limitations as a bar to the action.

At the conclusion of plaintiff's evidence the defendant

moved for a "judgment of dismissal" on the basis of the statute of limitations. Pertinent to the issue, this court in *Bonebrake* stated:

"Defendants take the position that plaintiff knew of the presence of the sponge in her abdomen within a matter of days after her first operation, hinging their argument upon her testimony, as above outlined; therefore, they say, the suit was brought too late, and the trial court should have granted their motions 'for judgment of dismissal' and for directed verdict.

"The answer to this is that different minds could have honestly drawn different conclusions from the testimony on this question; that the evidence viewed in its most favorable light in behalf of plaintiff was substantial, and warranted submission of the question to the jury under proper instructions. *Grand Junction v. Lashmett*, 126 Colo. 256, 247 P.2d 909; *Singer v. Chitwood*, 126 Colo. 173, 247 P.2d 905."

It is clear that Colorado does not follow the rule of strict construction. In situations where the defendant physician has *concealed* his negligence the cause of action does not accrue until the patient discovers the negligence, or by the exercise of reasonable diligence should have discovered it. *Rosane v. Senger, supra.*

In *Bonebrake*, whether or not the plaintiff actually knew or had reason to know of the cause of her injuries prior to the date of the alleged discovery was held to be a question for the jury. In *Bonebrake*, the issue of "discovery" turned on the question of *fraudulent concealment*.

*Bonebrake*, therefore, teaches that whether the statute of limitations bars a particular claim is a *fact* question. Although *Rosane* and *Bonebrake*, on their facts, deal with a *foreign body* (sponge) and *concealment*, we think the language of the court, particularly in *Rosane*, points the way to the application of the "discovery rule" in the context of the facts in this case.

Approximately ninety per cent of the states have statutes of limitation which hinge on the word *accrued*.

Estep and Van Dyke, *Radiation Injuries: Statute of Limitations Inadequacies in Tort Cases*, 62 Mich. L. Rev. 753, 756 (1964). The Oregon Supreme Court meticulously analyzed the word in interpreting its statute in *Berry v. Braner*, 245 Ore. 307, 421 P.2d 996:

"* * * The word 'accrue' is derived from the Latin 'ad' and 'creso' to grow to. When applied to independent or original demands it means to arise, to happen, to come into force or existence. *When used with reference to a cause of action it means when an action may be maintained thereon.* It accrues whenever one person may sue another. Black's Law Dictionary, 4th ed. and cases cited therein. The cause of action must necessarily accrue to some person or legal entity. To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law. *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372, 375 (1944) * * *."

See, also, *Fernandi v. Strully*, 35 N.J. 434, 173 A.2d 277.

There are a number of reasons why the word "accrued" should be equated with the "discovery rule"; first, the injustice of barring the plaintiff's action before he could reasonably have been aware that he had a claim is patent. "* * * In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should

know he has a cause of action, within which to sue." *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825.

See, also, *Iverson v. Lancaster,* 158 N.W.2d 507, (N.D.).

Second, in balancing the equities between the doctor and the patient, we feel that the burden placed on the doctor is much less than the great injustice the patient would suffer. As the Supreme Court of Hawaii stated, in *Yoshizaki v. Hilo Hospital,* 50 Hawaii 150, 433 P.2d 220, "* * * We realize that added burdens are placed on defendants by forcing them to defend claims with evidence that may be stale. We should not overlook the fact that the plaintiff must produce evidence sufficient to establish a prima facie case before the defendant is obliged to produce any evidence * * *."

See, also, *Iverson v. Lancaster, supra;* and *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745, where the Supreme Court of Rhode Island states:

"* * * It would appear from the modern trend toward the application of the discovery rule, that courts are beginning to conclude that only the negligent physician is protected by the strict interpretation of the statute of limitations in malpractice cases at the cruel expense of the public and of the competent physician. Cf. Note The Statute Of Limitations In Actions For Undiscovered Malpractice, 12 Wyo.L.J. 30 * * *."

Defendants have argued that the discovery rule is and should be applied only to foreign object cases. We believe the same rule should be applied regardless of the type of negligence involved.

Again, in the *Yoshizaki* case the court states:

"* * * A few courts appear to have limited the discovery doctrine to cases in which the defendant has left a foreign object inside the plaintiff in order to reduce the possibility that the plaintiff is asserting a completely fraudulent claim * * * [citations omitted]. We reject the distinction. In some cases, especially those involving an *allegedly negligent diagnosis,* a physical object is not involved and proof becomes more difficult. This does *not* necessarily

mean that a fraudulent claim may be more easily asserted. As in the instant case, treatment generally follows diagnosis. *The treatment is an objective fact which may be proved or disproved by people other than the plaintiff. The fact that the treatment is the kind normally administered for the ailment the doctor allegedly improperly diagnosed is strong evidence of the diagnosis.*" (Emphasis added.)

Another case which rejected the contention that the discovery rule should be applied only to foreign objects cases is *Wilkinson v. Harrington, supra.*

A final argument which the defendants raise is that there was no "fraudulent concealment" by the doctors. However, this argument is not relevant under the facts as alleged in the instant case. The fraudulent concealment issue would be applicable, for example, where a plaintiff discovers an injury and then is reassured by the doctor that nothing is wrong.

Thus we hold that in a professional negligence case the cause of action "accrues" when the patient discovers or, in the exercise of reasonable diligence, should have discovered the doctor's negligence.

The plaintiff in this case should have his day in court to show, if he can, that he began the action within two years after he discovered or, in the exercise of reasonable diligence, should have discovered the alleged negligence of the doctor.

The judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

MR. JUSTICE DAY, MR. JUSTICE HODGES and MR. JUSTICE LEE concur.