487 P.2d 379 (1971)
Charles B. NITKA, Plaintiff in Error,
v.
Wayne P. BELL, Defendant in Error.
No. 70-161.
Colorado Court of Appeals, Div. I.
June 8, 1971.
Rehearing Denied June 29, 1971.
*380 Zarlengo, Mott & Carlin, John C. Mott, Denver, for plaintiff in error.
Haney, Howbert & Akers, Roger D. Hunt, Moyers, Dunlap & Kirkman, Robert Dunlap, Colorado Springs, for defendant in error.
Selected for Official Publication.
DUFFORD, Judge.
The parties are before us in reverse of their trial court positions, and we shall refer to them by their trial court designations.
Plaintiff instituted this action against defendant to recover damages allegedly resulting from medical malpractice. It was asserted that the defendant negligently performed an operation on the plaintiff's knee in September 1964. Plaintiff's action was instituted in June of 1968; the matter was tried to the court, which ultimately entered a money judgment in favor of the plaintiff and against the defendant in the amount of $62,241.84. Defendant has appealed, asserting that the bringing of this action was barred by the provisions of 1967 Perm. Supp., C.R.S.1963, 87-1-6, which specifies that no person shall be permitted to maintain an action to recover damages from one licensed to practice medicine unless the action be instituted within two years after the cause of action accrued.
The factual landscape behind this action is that sometime during August 1964 the plaintiff, while in the course of his regular employment, suffered an injury to his right knee. Following the injury, the plaintiff was examined by the defendant, who diagnosed the injury as being a torn lateral cartilage within the knee. To correct such condition, the defendant operated for the purpose of removing the knee cartilage. The operation was performed with plaintiff's leg being locally anesthetized, and the plaintiff was mentally conscious. The defendant was able to locate and remove only a portion of the knee cartilage, and after probing for the remaining portion of cartilage, the defendant advised the plaintiff that he had been unable to remove all of the cartilage. He further told the plaintiff that he did not think it would be advisable either to make any additional incision in the plaintiff's knee or to probe further in order to remove the remaining cartilage.
From the time of the operation until February of 1965, the plaintiff remained under the care of the defendant and continued to have serious difficulties with the knee which had been the subject of the surgery. Throughout such period, the defendant advised the plaintiff on several occasions that plaintiff's continuing difficulty with his knee was the result of the defendant's having left the cartilage within the knee. In February of 1965, at the suggestion of the defendant, the plaintiff was examined by an orthopedic surgeon, who also concluded that the continuing difficulty plaintiff was experiencing with his knee was due to the fact that cartilage had been left in the knee. In the latter part of February 1965, that orthopedic surgeon also operated on the knee and removed the remaining cartilage.
Further treatment of the plaintiff's knee followed this second operation. Because of his initial and continued disablement from the knee injury, plaintiff prosecuted a claim for benefits under the Workmen's *381 Compensation Act. In connection with such claim, a hearing was held before the Industrial Commission of the State of Colorado during July of 1966. During the course of this hearing, the orthopedic surgeon who had performed the second operation on the plaintiff's knee indicated in his testimony that it was his opinion the initial surgery which had been performed by the defendant on the plaintiff's knee was done in a manner which was contrary to acceptable medical practices within the community in which he and the defendant practiced.
At the trial of this case, the trial court held that the plaintiff's action against the defendant did not accrue within the meaning of the applicable statute of limitations until the July 1966 hearing on the Workmen's Compensation claim. It was the trial court's reasoning that upon such date the plaintiff, being possessed of only lay judgment, first realized the defendant's conduct did not meet acceptable medical standards and that this was the event which began the running of the statute.
The trial court's specific ruling on this point was as follows:
"The Court further concludes that Plaintiff's cause of action did not accrue until July 22, 1966, less than two years prior to the commencement of this action, and is therefore not barred by Sec. 87-1-6, Colorado Revised Statutes 1963.
"This issue, reduced to its essentials, is whether a layman, the victim of medical malpractice, is to be barred from asserting his causeotherwise provenby reason of his ignorance of the standards of medical practice and his ignorance in matters of medical cause and effect.
"The Court is persuaded that the statute of limitations cited above is not intended to require the commencement of an action when the injured party is justifiably ignorant of the existence of one. The Court is equally persuaded that the law does not impose upon the injured party a constructive knowledge of facts i. e., standards of practice, medical causation which are, indeed, unknown to the Court itself without the assistance of expert testimony.
"The Colorado Supreme Court has announced and repeated its adherance [sic] to these propositions. Rosane v. Senger, 112 Colo. 363, 149 P.2d 372; Davis v. Bonebrake, 135 Colo. 506, 313 P.2d 982."
In view of the recent decision of our Supreme Court in Owens v. Brochner, 172 Colo. ___, 474 P.2d 603, we conclude that the above determination by the trial court was correct, and it is affirmed. The specific holding in Owens v. Brochner, supra, is as follows:
"Thus we hold that in a professional negligence case the cause of action `accrues' when the patient discovers or, in the exercise of reasonable diligence, should have discovered the doctor's negligence." (Emphasis added)
In arriving at its holding, the Colorado Supreme Court quoted with approval the following statement from Waldman v. Rohrbaugh, 241 Md. 137, 215 A.2d 825:
"* * * In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue." (Emphasis added)
The ruling in Owens v. Brochner, supra, must be applied to this case, and, when applied, it becomes apparent that the trial court's conclusions of law were correct. In determining when the plaintiff's action accrued, the trial court proceeded on the theory that the action did not accrue until the plaintiff, as a layman, knew or should have known that the doctor's acts were negligent and legally delinquent as measured *382 against the applicable medical standards. This is the test prescribed by the ruling in the Owens case.
Upon the basis of such test, the trial court further found that the plaintiff in this case did not know and should not have known that the defendant's acts were legally negligent until July of 1966, at which time he heard an opinion expressed by a physician that the defendant's conduct failed to meet accepted medical standards. This was a factual determination supported by the evidence in this case, and it will not be disturbed by this Court upon review.
The judgment of the trial court is affirmed.
COYTE and PIERCE, JJ., concur.