537 P.2d 754 (1975)
Sandra SHORT, Plaintiff-Appellee,
v.
Linwood E. DOWNS, Defendant-Appellant.
No. 74-185.
Colorado Court of Appeals, Div. III.
May 6, 1975.
As Modified on Denial of Rehearing June 3, 1975.
Certiorari Denied July 28, 1975.
*756 Friedman, Bader & Dufty, Charles A. Friedman, Denver, for plaintiff-appellee.
Margaret Bates Ellison, Denver, for defendant-appellant.
Selected for Official Publication.
KELLY, Judge.
This is a medical malpractice action. The defendant, Linwood E. Downs, appeals from the judgment entered by the trial court in favor of plaintiff totaling $16,884.26. Of this amount, the trial court awarded $557.45 for special damages, $8500 for general damages, and $5,000 for exemplary damages, the balance consisting of costs, interest, and witness fees. We affirm.
The record shows, and the trial court found, among other things, the following facts. The plaintiff, Sandra Short, went to see Downs, an osteopath, in June of 1967, about having liquid silicone injected into her breasts for the purpose of augmentation.
Downs gave Short a pamphlet to read which purported to explain the experimental nature of the use of liquid silicone for cosmetic injection. Short was also given a written consent form authorizing the use of the "Sakurai Formulae Procedure," which she signed. Between June and November 1967, Downs administered to Short a series of silicone injections.
However, without informing Short, Downs did not use the Sakurai formula. Instead he used a silicone known as Dow Corning "Medical Fluid 360." Evidence was introduced demonstrating that Downs had been informed by Dow Corning Chemical Corporation that the Sakurai formula differed from "Medical Fluid 360," and bottles of the "Medical Fluid 360" silicone obtained from Downs' office bore the warning label "not for human use."
In June 1970, Short first began to experience inflammation, burning and discoloration of the tissues across the tops of her breasts. These symptoms persisted, and after further medical examination and consultation in the ensuing year, Short filed this action against Downs in June 1971. Subsequently, in September 1971, Short's condition was diagnosed as chronic non-malignant cyst formation resulting from the silicone injections.

Statute of Limitations
Asserting that the trial court erred in finding that plaintiff did not discover her *757 injuries until June 1970, Downs first contends that this action is barred by the two year statute of limitations contained in § 13-80-105, C.R.S.1973 (1971 Perm.Supp., C.R.S.1963, 87-1-6). We disagree.
A claim for relief in cases such as this does not accrue until the plaintiff, as a lay person, discovers, or in the exercise of reasonable diligence, should have discovered that the physician was negligent according to the standards prevailing in the community for members of his profession. Whether the action is barred by the statute of limitations is, therefore, dependent upon the determination of this question of fact. See Owens v. Brochner, 172 Colo. 525, 474 P.2d 603; Davis v. Bonebrake, 135 Colo. 506, 313 P.2d 982; Nitka v. Bell, 29 Colo. App. 504, 487 P.2d 379.
The evidence shows that Short began to develop lumps in her breasts in 1969 and went to see Downs about this condition in January of that year. He assured her there was no cause for concern.
Short returned to see Downs later in 1970, when she began experiencing the breast inflammation. Being dissatisfied with his course of treatment, however, she went to consult her gynecologist in April 1971, and subsequently filed this action in June 1971.
Although from this evidence the trial court could have determined that Short should have known of defendant's negligence in 1969, the evidence also supports the court's finding that she was not reasonably aware of defendant's negligence until the irritating and painful symptoms began in June 1970. Hence, the statute of limitations was properly determined not to be a bar to the action.

Malpractice and Proximate Cause
Downs next contends that there was insufficient evidence of medical malpractice and of proximate cause to support the judgment. Appraising these contentions with due deference to the findings of the trial court as trier of fact, see Kearney Investment Corp. v. Capitol Federal Saving & Loan Association, 169 Colo. 30, 452 P.2d 1010; Broncucia v. McGee, 173 Colo. 22, 475 P.2d 336, we conclude that Downs' arguments must fall.
To establish negligence for medical malpractice under the circumstances of this case, the plaintiff must show by expert testimony that the defendant did not conform to the standard of care and degree of skill ordinarily possessed by members of his school of medicine in similar circumstances. Bolles v. Kinton, 83 Colo. 147, 263 P. 26, 56 A.L.R. 814; Caro v. Bumpus, 30 Colo.App. 144, 491 P.2d 606.
Significant evidence was presented indicating that at least two years before treating Short, Downs, knew that "Medical Fluid 360" was not a proper substance for breast augmentation and was not for human use. When taken together with the testimony of a doctor of osteopathy that it was not within the standard of care of osteopaths in Denver to inject into the human body an experimental drug labeled "not for human use", this evidence was sufficient to establish medical malpractice. Although Downs disputed his knowledge of the unsuitability of "Medical Fluid 360" for human use, we are not at liberty to disturb the trial court's resolution of that issue. See Credit Investment & Loan Co., Inc. v. Guaranty Bank & Trust Co., 166 Colo. 471, 444 P.2d 633; Crosby v. Watson, 144 Colo. 216, 355 P.2d 958.
Similarly, Downs' argument that there was no evidence of proximate cause is not supported by the record. It is true that a mere possibility is not sufficient to establish a causal connection between a physician's alleged negligence and a plaintiff's injury. See Lamme v. Ortega, 129 Colo. 149, 267 P.2d 1115; Brown v. Hughes, 94 Colo. 295, 30 P.2d 259. It is not necessary, however, that proximate cause be established with certainty. See 61 Am.Jur. 2d, Physicians and Surgeons § 210.
There was testimony by physicians experienced in treating fibrocystic conditions *758 and familiar with the use of silicone for breast augmentation that Short's condition was caused by silicone injections. The determination of proximate cause is for the trier of facts, see Artist v. Butterweck, 162 Colo. 365, 426 P.2d 559, and we cannot say that the evidence supporting the trial court's determination of that issue was so insubstantial as to justify reversal. See Lamme v. Ortega, supra.

Informed Consent
Downs argues that the written consent form signed by Short is an exculpatory agreement which bars this action and that it is evidence that Short assumed the risk.
The Colorado rule on informed consent was enunciated in Stauffer v. Karabin, 30 Colo.App. 357, 492 P.2d 862; and does not require full and complete disclosure by a physician of all the risks in those cases where such disclosure would be inpracticable. Rather, if the plaintiff shows that the physician failed to provide information about the risks involved in the proposed course of treatment, and, that therefore, any consent given by the plaintiff was uninformed, the burden is then on the physician to come forward with evidence that the nondisclosure conforms with the community standard of care in similar cases. See Colorado Jury Instructions 15:11.
Here, whatever effect the signed consent might have had if Short had undergone treatment using the Sakurai procedure and formula, it has no significance in regard to treatment using "Medical Formula 360." Further, any assumption of risk as to the silicone injection treatments would not extend to treatment with a substance not authorized for human use unless such added risk were clearly known to the patient. See Arapahoe Basin, Inc. v. Fischer, 28 Colo.App. 580, 475 P.2d 631.

Alleged Improprieties of Plaintiff's Counsel
Downs argues that plaintiff's attorney was guilty of certain improprieties which affected the outcome of the case. First, it is asserted that counsel made improper innuendos about a medical colleague of Downs and second, that counsel "paraded" alarming and prejudicial pictures before the trial court, which were not admitted in evidence.
This was a trial to the court. There is a presumption that incompetent evidence is disregarded by the trial court in reaching its conclusion, and a judgment will not be reversed if there is competent evidence in the record to support it. See Vanadium Corp. v. Wesco Stores Co., 135 Colo. 77, 308 P.2d 1011; Bill Dreiling Motor Co. v. Travelers Indemnity Co., 29 Colo.App. 163, 482 P.2d 999. We find nothing in the record to indicate that the trial court even looked at the photographic exhibits which were offered, but not admitted, nor is there anything tending to show that the statements of plaintiff's counsel concerning Downs' medical colleague in any way affected the outcome of the trial.

Reception and Rejection of Evidence
Downs makes the general assertion that the trial court erred in the admission and exclusion of evidence, but does not specify the testimony or exhibits which were "erroneously" admitted or excluded. An appellant is required to set out alleged errors with sufficient specificity to enable the reviewing court to determine what error is alleged. Buchanan v. Burgess, 99 Colo. 307, 62 P.2d 465.
We have carefully examined the record in this case and are unable to find prejudicial error in the trial court's admission or exclusion of evidence. Since the sufficiency and competency of the evidence admitted are within the discretion of the trial court, its decision will not be reversed unless it is shown to be erroneous or an abuse of discretion. See Ross v. Colorado National Bank, 170 Colo. 436, 463 P.2d 882; Publix Cab Co. v. Colorado National Bank, 139 Colo. 205, 338 P.2d 702, 78 A.L. R.2d 198. There was no such showing here.

*759 Damages

Finally, Downs argues that the damages awarded by the trial court were excessive and were not supported by the evidence.
Actual damages are those which are the natural outcome of a defendant's negligence. Permanency of the injuries and pain and suffering, which are established by the evidence, should be taken into account when fixing the amount of these damages. See King v. Avila, 127 Colo. 538, 259 P.2d 268. Here, there was medical testimony that Short's condition was caused by silicone injections. Prognosis was that she would continue to develop lumping and breast inflammation, requiring continued supervision. Recommended future treatment included semi-annual checkups, regular mammographies, and, if the condition worsened, biopsies and possible removal of the breasts. In our view, this evidence was sufficient to support the trial court's award of $8500 for plaintiff's general damages.
Downs' contention that there was no evidence to justify an award of exemplary damages is also without merit. Exemplary damages are awarded against a defendant as punishment for wrongdoing and to deter other possible wrongdoers. See Beebe v. Pierce, Colo., 521 P.2d 1263. However, a plaintiff must prove that the injury was inflicted with wanton and reckless disregard of the rights and feelings of the plaintiff.
The record in this case shows that Downs knew or should have known that the substance he injected was labeled "not for human use," and he did not undertake to find out what risks and complications might result from his use of "Medical Fluid 360" for human injection. This was sufficient evidence to support the finding that Downs acted with wanton and reckless disregard of plaintiff's rights and feelings, and, in the absence of an abuse of discretion in determining the amount of the exemplary damages, the findings will not be disturbed on review. See Leo Payne Pontiac v. Ratliff, 178 Colo. 361, 497 P.2d 997. Under the facts of this case, we cannot say that an award of $5,000 for exemplary damages was disproportionate to plaintiff's general damages. See Montgomery v. Tufford, 165 Colo. 18, 437 P.2d 36.
The judgment is affirmed.
PIERCE and SMITH, JJ., concur.