570 P.2d 544 (1977)
Arthur B. KITTO and Marion I. Kitto, Plaintiffs-Appellants and Cross-Appellees,
v.
Beatrice T. GILBERT, M. D., Defendant-Appellee and Cross-Appellant, and
The Presbyterian Medical Center, a corporation, and Frank A. Perreten, M. D., Defendants-Appellees.
Nos. 76-097 and 76-114.
Colorado Court of Appeals, Div. III.
June 2, 1977.
As Modified On Denial of Rehearing July 28, 1977.
Certiorari Denied October 24, 1977.
*547 Kenneth N. Kripke, Denver, for plaintiffs-appellants and cross-appellees.
Tilly & Graves, Ronald O. Sylling, Denver, for defendant-appellee and cross-appellant.
Montgomery, Little, Young, Campbell & McGrew, P. C., Robert R. Montgomery, Denver, for defendant-appellee Presbyterian Medical Center.
Hansen, Anstine & Hill, Robert W. Hansen, Denver, for defendant-appellee Frank A. Perreten, M. D.
PIERCE, Judge.
Arthur Kitto lost the sight of his left eye during a cataract operation performed under general anesthesia at Presbyterian Medical Center (the hospital). The operating surgeon was Dr. Frank Perreten; the anesthesiologist was Dr. Beatrice Gilbert. Arthur Kitto and his wife Marion sued both doctors and the hospital. A number of claims were asserted against each defendant, but after rulings by the trial court, the case was submitted to the jury on the following basis: A negligence claim against Dr. Gilbert, a medical malpractice claim against Dr. Perreten on an alleged absence of informed consent, and a respondeat superior claim against the hospital for actions of hospital-employed nurses who were present and assisted during the operation. See Bernardi v. Community Hospital Ass'n, 166 Colo. 280, 443 P.2d 708 (1968). The jury found only Dr. Gilbert liable. The Kittos appeal. They assert that the trial court's rulings erroneously restricted the potential liability of Dr. Perreten and the hospital. Dr. Gilbert also appeals, principally urging insufficiency of the evidence in support of the liability verdict and the excessiveness of the awarded damages. We reverse the liability verdict, affirm the damages determination, and remand for a new trial on liability only.

THE KITTOS' APPEAL
Arthur Kitto consulted with Dr. Perreten after noticing problems with his eyesight. Dr. Perreten advised immediate cataract removal surgery on the left eye to which Kitto consented. Dr. Gilbert was contacted by Dr. Perreten's office to provide her services as anesthesiologist.
At the beginning of the operation, anesthesia was administered to Kitto by Dr. Gilbert, rendering Kitto unconscious. The corrugated tubing connecting Kitto to the anesthesiology machine was taped to his chest by Dr. Gilbert. This was done to prevent displacement of the tubing during the operation.
Dr. Perreten or his assistant or both of them then draped sterile sheets over Kitto's body, possibly aided in this endeavor by a nurse. Only a small area around the left eye was left exposed so that the tubing and connections were completely covered. Dr. Gilbert testified that the connections were properly fitted at that time.
Then, a nurse wheeled in an instrument tray which was placed over Kitto's chest. According to Dr. Gilbert, the nurse had difficulty adjusting the height of the tray, and the tray slipped and may have struck Kitto's chest or the draped sheets. The connection was not examined following this alleged incident.
In the midst of surgery, Kitto became inadequately anesthetized and coughed, causing the expulsive loss of the eye. Dr. Gilbert then discovered that the connection had become dislodged so that Kitto had not remained connected to the anesthetic supply as had been intended.
Dr. Gilbert in unrebutted testimony stated that the disconnection, with the concomitant inadequate anesthesia, in all probability caused Kitto to cough. There was no evidence, however, demonstrating the cause of the disconnection, other than the possibility that the instrument tray touched the *548 tubing, that the tube was improperly connected, or that it was displaced during the taping or draping.

I. Res Ipsa Loquitur

The Kitto's primary contention is that the trial court erred in failing to permit the jury to consider the presumption of negligence embodied in the doctrine of res ipsa loquitur. We agree that, under the circumstances, the trial court should have instructed the jury on res ipsa loquitur.
Res ipsa loquitur is a rule which presumes evidence which applies when it is judicially determined that a particular unexplained occurrence creates a prima facie case of negligence without proof of specific misfeasance. St. Luke's Hospital v. Schmaltz, 188 Colo. 353, 534 P.2d 781 (1975); Weiss v. Axler, 137 Colo. 544, 328 P.2d 88 (1958). Where applied it takes the place of evidence of negligence. Instruction on res ipsa loquitur is proper where the evidence reveals the occurrence of a harm which ordinarily would not have occurred, but for negligence, and which is caused by an agency or instrumentality within the exclusive control of the defendants sought to be charged with liability without contribution by plaintiff, and under circumstances such that evidence as to the explanation of the events causing the harm is more accessible to the defendants than to the plaintiff. Hilzer v. MacDonald, 169 Colo. 230, 454 P.2d 928 (1969); Hook v. Lakeside Park Co., 142 Colo. 277, 351 P.2d 261 (1960). See also Weiss v. Axler, supra.
A corollary requirement is that no direct evidence exists establishing that a specific act of negligence was the only likely cause for the harm. See Denver Tramway Corp. v. Kuttner, 95 Colo. 312, 35 P.2d 852 (1934). Each defendant in this case asserts there was no evidence establishing that a particular action caused the disconnection. The record supports these assertions. The mere introduction of evidence as to how an accident could have occurred and its possible causes does not necessarily preclude application of res ipsa loquitur so long as that evidence does not clearly resolve the issue of culpability. Scott v. Greeley Joslin Store Co., 125 Colo. 367, 243 P.2d 394 (1952). See also Hook v. Lakeside Park Co., supra.
Hence, we must determine whether the evidence satisfied the requirements for the application of res ipsa loquitur. All defendants concede that no voluntary act of plaintiff was a causative factor. Disputed are the likelihood of negligence, exclusive control, and the accessibility of the evidence. These matters we resolve in favor of the applicability of res ipsa loquitur.
The evidence indicated that a disconnection of the tubing without negligence was improbable. Testimony revealed the snugness of the type of pressure fitting which was dislodged. Expert testimony adduced by Dr. Perreten, on the issue of informed consent, illustrated that the detachment of this connection was not a contemplated risk of the surgery. Indeed, the circumstances were such that a jury could find the disconnection to be evidence of negligence without the aid of expert testimony. See Farrah v. Patton, 99 Colo. 41, 59 P.2d 76 (1936).
It is argued, however, that the testimony of Dr. Perreten and Dr. Gilbert demonstrated that this incident could have occurred without negligence. Both doctors testified that a patient could begin to rise out of the appropriate level of unconsciousness despite the exercise of due care. This testimony and argument ignore the fact that by unrebutted evidence the cause of the loss of Arthur Kitto's eye was shown to be the disconnection of the anesthesia equipment, and not some other event such as improper calculation of the quantity of anesthetic required. There was no testimony that this disconnection could have occurred without negligence.
Dr. Perreten and the hospital next question whether they had exclusive control over the instrumentality causing the occurrence. The basis for this argument is Dr. Gilbert's testimony that she had exclusive control of the anesthesiology equipment and of the patient's level of consciousness. However, this testimony is in direct conflict with other uncontradicted evidence that the *549 instrumentality was at least partially under the control of each defendant at some time during the operation through their various participation in taping and draping Kitto and in positioning the instrument tray.
An insensible passive recipient of treatment administered by other parties who is injured in the course of that treatment is hardly in a position to demonstrate each person's exclusive control. Thus, it is sufficient to show, as was done here, that at the relevant time, the instrumentality was under the control of no person who was not a defendant or an employee of a defendant. Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687 (1945). See also Weiss v. Axler, supra; Zimmerman v. Franzen, 121 Colo. 574, 220 P.2d 344 (1950). A careless act during any of the preliminary procedures possibly could have caused the disconnection. Under such circumstances, the exclusive control requirement was satisfied.
Finally, we reject the contention that, once the dislodged anesthesia connection was shown to be the offending instrumentality, the Kittos had equal means of ascertaining the cause of the occurrence. Because he was anesthetized, Arthur Kitto had no knowledge as to the cause of the disconnection. His wife was not present in the operating room, and the only conscious persons there were defendants or employees of defendants. Thus, in the absence of voluntary disclosure by the participants as to the precise cause of the disconnection, the Kittos remained at an evidentiary disadvantage in this respect. This is precisely what res ipsa loquitur is designed to combat. Ybarra v. Spangard, supra. See also St. Lukes Hospital Ass'n v. Long, 125 Colo. 25, 240 P.2d 917 (1952).
We therefore conclude that, since the evidence did not resolve the issue of culpability, the trial court erred in filing to submit a res ipsa loquitur instruction to the jury to aid in its determination of the negligence issue. See Scott v. Greeley Joslin Store, supra.
The hospital's contention that the plaintiff's tendered instruction on this issue was defective does not render the error committed harmless. The trial court had previously ruled that res ipsa loquitur was inapplicable and that no instruction on that subject would be given. Under these circumstances, any alleged deficiency in the tendered instruction is irrelevant.

II. Vicarious Liability

The trial court's refusal to permit the jury to consider the possible liability of Dr. Perreten for the acts of Dr. Gilbert and the nurses under a species of vicarious liability referred to as the "Captain of the Ship" doctrine is alleged as error by the Kittos. See, e. g., Adams v. Leidholdt, Colo.App., 563 P.2d 15 (announced December 23, 1976), cert. granted, April 25, 1977. The Kittos contend that Dr. Perreten is liable under agency principles for the negligence of his selected anesthesiologist, and is responsible by virtue of the "borrowed servant" rule for the conduct of the nurses in the operating room. See Sparger v. Worley Hospital, Inc., 547 S.W.2d 582 (Tex.1977).
Under Colorado law, the jury should have been instructed that Dr. Perreten was vicariously liable for the negligence of both Dr. Gilbert, and also for the nurses if he had assumed control in the operating room.
While performing medical services within a hospital, a licensed physician is the principal or the master, rather than an agent or a servant. See Moon v. Mercy Hospital, 150 Colo. 430, 373 P.2d 944 (1962). Hence, a hospital cannot be held liable through respondeat superior for the negligence of a physician, even a physician who is employed by the hospital. Rosane v. Senger, 112 Colo. 363, 149 P.2d 372 (1944). However, the fact that the hospital is not liable for Dr. Gilbert's actions does not resolve whether Dr. Perreten could be so charged. We conclude that Beadles v. Metayka, 135 Colo. 366, 311 P.2d 711 (1957), answers this question in the affirmative.
In Beadles, our Supreme Court held that once the operating surgeon assumes control in the operating room, the surgeon is liable for the negligence of all persons working under the surgeon's supervision. *550 Although because of the facts there presented Beadles primarily dealt with potential liability for the acts of a non-physician, Ybarra v. Spangard, supra, was cited as authority for imposition of liability. In Ybarra, the California Supreme Court held that the surgeon in charge could also be held liable for the acts of other licensed physicians assisting in the operating room by virtue of selection and supervision. See also Adams v. Leidholt, supra. In Beadles, however, the court stated that liability under this doctrine is not predicated on the absence of professional skill, but rather, arises solely as a consequence of the surgeon's supervisory position; thus it concluded that the manner of selection of the personnel is immaterial, and that an operating surgeon could be held liable for the acts of those assisting even where the surgeon had no voice in their selection. If, as in Beadles, an operating physician is liable for the actions of others not personally selected, surely liability ensues when an assisting physician is one chosen by the surgeon. Hence, the jury should have been instructed that Dr. Perreten was vicariously liable for the negligence of Dr. Gilbert, and for the negligence of the nurses, if any.
Potential vicarious liability for the acts of the nurses presents a different situation. Here, the analogy urged is that of the "borrowed servant." Beadles is dispositive of this issue. Dr. Perreten is liable for the negligence of assisting hospital personnel if, as a factual matter, he had assumed the requisite control.
Although conceivably both the operating surgeon and the hospital could be simultaneously liable under respondeat superior for the negligence of a hospital employee assisting in an operation, see Tonsic v. Wagner, 458 Pa. 246, 329 A.2d 497 (1974), Colorado has restricted potential liability to either the one or the other. Hence, a factual question is presented as to whether the operating surgeon had assumed such control, at the time of the alleged negligent act, that the surgeon's responsibility supersedes that of the hospital. Compare Beadles v. Metayka, supra, with Bernardi v. Community Hospital Ass'n, supra, and Moon v. Mercy Hospital, supra.

III. The Hospital's Negligence

The Kittos contend that the trial court erroneously prevented their examination of a hospital representative regarding review of staff privileges. Although this attempted questioning was premised on a claim that the hospital was negligent in maintaining an incompetent anesthesiologist on its staff, the Kittos made no offer of proof of any prior misfeasance by Dr. Gilbert. See Adams v. Leidholt, supra. On retrial, if the Kittos adduce proper evidence of prior negligence or incompetency, examination of hospital representatives on this issue should be permitted, and this claim should be submitted to the jury. See Rosane v. Senger, supra. See also Purcell v. Zimbelman, 18 Ariz.App. 75, 500 P.2d 335 (1972); Mitchell County Hospital Authority v. Joiner, 229 Ga. 140, 189 S.E.2d 412 (1972).

IV. The Instructions

The Kittos challenge the sufficiency and propriety of certain submitted instructions, and assert that error was committed upon refusal of their tendered instructions.
They first question the instructions submitted on informed consent. This aspect of the lawsuit was concerned with the negligence of Dr. Perreten in allegedly failing to advise Arthur Kitto properly as to the risks involved in the operation. The evidence presented a jury question only as to whether Dr. Perreten acted negligently in failing to disclose the enhanced danger in undergoing surgery under general as opposed to local anesthesia. Except as to this increased risk, there was no expert testimony that the disclosures made fell below applicable medical standards. On the contrary, unrebutted expert testimony supported the adequacy of the limited disclosures claimed by the Kittos to have been made by Dr. Perreten prior to the operation. Under these circumstances, the trial court correctly limited the jury's consideration *551 of this claim to the purported failure of advisement concerning magnified risks of an operation under general anesthesia. See Hamilton v. Hardy, Colo.App., 549 P.2d 1099 (1976); Short v. Downs, 36 Colo.App. 109, 537 P.2d 754 (1975). See also Mallett v. Pirkey, 171 Colo. 271, 466 P.2d 466 (1970). Those aspects of the Kittos' tendered instructions on this issue which were in accordance with Colorado law were substantially embodied in the instructions given.
The Kittos next contend that the trial court erred in refusing their tendered instructions on concurrent causation. They argue that, through res ipsa loquitur, the evidence would support a jury verdict that the negligence of more than one defendant was the proximate cause of the injury to Arthur Kitto. See Colo. J.I. 9:25 & 9:26. Defendants do not dispute the applicability of such tendered instruction, but contend that non-submission was at most harmless error because of other instructions which informed the jury that it could find more than one defendant liable. Without deciding whether reversible error occurred, we hold that if, upon retrial, the evidence supports a possible finding that more than one defendant was negligent, the jury should be given a proper instruction on concurrent causation.
We also agree with the Kittos' argument that, on retrial, the jury should not be instructed that "the happening of an accident" does not raise a presumption of negligence. See Colo. J.I. 9:9. To avoid confusing the jury, this instruction should not be given in a res ipsa loquitur case. Shutt v. Kaufman's, Inc., 165 Colo. 175, 438 P.2d 501 (1968). See also Denver Tramway Corp. v. Kuttner, supra.
Finally, the Kittos dispute the applicability of instructions submitted on the standard of care required for establishment of liability for medical malpractice. The instructions submitted were in accordance with Colo. J.I. 15:2 and 15:3, and advised the jury of a physician's warranty of capacity and ability generally, and of the magnified standard of care required of a specialist.
The Kittos' claim and evidence on the alleged absence of informed consent required that the jury be given guidance as to the law applicable to medical malpractice in this context. This was accomplished by the submission of these two instructions which enabled the jury to evaluate the propriety of Dr. Perreten's allegedly limited disclosures. See Hamilton v. Hardy, supra; Short v. Downs, supra. See also Smith v. Curran, 28 Colo.App. 358, 472 P.2d 769 (1970).

DR. GILBERT'S APPEAL

I. Timeliness of Filing of Notice of Appeal

We reject the Kittos' assertion that Dr. Gilbert's appeal should be dismissed because of the alleged untimeliness of her filing of the notice of appeal. The notice was filed after expiration of the 30 day period following final judgment, but within 14 days after the Kittos' notice of appeal was timely filed.
Dr. Gilbert's notice was filed within the applicable period. The timely filing of a notice of appeal by any party affords an additional 14 days to all other parties, regardless of whether the party subsequently appealing was an appellee in the initial appeal. C.A.R. 4(a). See also Kurdziel v. Pittsburgh Tube Co., 416 F.2d 882 (6th Cir. 1969).

II. Dr. Gilbert's Liability for Alleged Medical Malpractice

Dr. Gilbert first asserts in support of reversal of the judgment of liability that the court should have directed a verdict in her favor because of the absence of expert testimony regarding deviation from the applicable standard of professional care. See Mallett v. Pirkey, supra. See also Short v. *552 Downs, supra; Caro v. Bumpus, 30 Colo. App. 144, 491 P.2d 606 (1971). The record supports Dr. Gilbert's contention regarding the absence of such expert testimony as to any procedure followed by her. Although the inference of negligence arising from the disconnection did not require expert analysis, there was no evidence establishing Dr. Gilbert's culpability in this regard. See Farrah v. Patton, supra. Hence, the liability judgment against Dr. Gilbert must be reversed.
However, through res ipsa loquitur, a jury question as to her negligence was presented by the evidence. Hence, although a directed verdict would have been proper had this been an ordinary medical malpractice action, here the issues nevertheless should have been submitted to the jury with the appropriate res ipsa loquitur instructions. A new trial on liability is therefore warranted.

III. Instructions

Dr. Gilbert challenges the submission of an instruction on impairment of future earning capacity, asserting that evidence that Arthur Kitto was earning more money than before he lost his eye precluded any award premised on diminished earning capacity. To state this assertion is to refute it. Lost earnings differ from impaired capacity. See Gibbons v. Choury, 169 Colo. 267, 455 P.2d 649 (1969). Arthur Kitto suffered a permanent physical disability. A jury could therefore properly award damages for diminished earning ability, and the trial court acted correctly in submitting instructions on this issue.
Dr. Gilbert also argues that the trial court erred in instructing the jury that damages could be awarded to Marion Kitto for loss of consortium, contesting the existence of evidence of lost services and companionship. She also contends that damages could be awarded only to the extent that consortium lost as a consequence of alleged negligence exceeds that which ordinarily would have followed a cataract operation. However, neither Dr. Gilbert nor any other defendant interposed a specific objection to any aspect of the consortium instruction submitted, and no alternative instructions on this issue were tendered. Hence, we do not consider this matter on appeal. C.R.C.P. 51; Sharoff v. Iacino, 123 Colo. 456, 231 P.2d 959 (1951).
We also reject Dr. Gilbert's assertion that the trial court erred in refusing her tendered instructions to the effect that proof of a lamentable result is not evidence of negligence. See Smith v. Curran, supra. The rationale previously applied to rejecting the instruction on the "happening of an accident" also applies here. In addition, such a charge might be warranted in cases where the evidence of alleged malpractice consisted solely of inferences to be drawn from unsuccessful surgery or infection. However, this instruction has no place where the challenged negligence is not the manner of treatment, but the occurrence during treatment of an event which was likely the result of misfeasance. The character of this act was within the jury's own expertise. See Edwards v. Quackenbush, 112 Colo. 337, 149 P.2d 809 (1944). See also Farrah v. Patton, supra. See generally Shutt v. Kaufman's, Inc., supra.

IV. Alleged Excessiveness of the Damages Verdict

Finally, Dr. Gilbert urges that the damages verdicts were excessive as a matter of law. We do not agree.
The jury determined Arthur Kitto's damages to be $65,330, and awarded $5,110 to Marion Kitto. In support of her argument of excessiveness, Dr. Gilbert stresses Arthur Kitto's age, his improved earnings, and the lack of specific evidence as to the temporal extent of lost companionship suffered by his spouse. These were matters for the jury's deliberations to be considered together with the permanency of the disability. The jury's assessment of damages under *553 these circumstances cannot be said to be excessive as a matter of law. See Martin v. Bralliar, 36 Colo.App. 254, 540 P.2d 1118 (1975).

LIMITED REMAND
Finally, we must decide whether reversal and remand on liability requires retrial on damages. We conclude that it does not.
The propriety of limited remand for retrial of liability only was addressed by our Supreme Court in Bassett v. O'Dell, 178 Colo. 425, 498 P.2d 1134 (1972). Bassett was a personal injury action following an automobile collision. The trial court's refusal to submit defendant's counterclaim to the jury formed the basis for reversal. The Supreme Court determined that retrial would not be limited solely to liability, but would include the question of damages, based on the court's conclusion that the two issues were inextricably interwoven under the facts, and that a subsequent jury would be able to infer the original verdict in plaintiff's favor to the prejudice of the defendant. Also noted in Bassett was whether the evidence on damages was objective, whether the testimony as to the two issues was elicited from the same sources, and whether the amount of the verdict was "seriously challenged" on appeal.
Whether the damages awarded are questioned on appeal, as they were here, is a factor of comparatively little significance in determining if limited retrial is warranted. Bassett v. O'Dell, supra. See also Hildyard v. Western Fasteners, 33 Colo.App. 396, 522 P.2d 596 (1974). Rather, the determinative considerations are those factors relating to fairness. The focus is on the relationship between the issues under the evidence and the practical logistics of retrial. If the issues are sufficiently distinct and separable so as to demonstrate the likelihood that jury determination of one would not affect its resolution of the other, and limited retrial can be accomplished without prejudicially indicating the prior verdict, then judicial economy and justice are served by restricting the scope of retrial. Bassett v. O'Dell, supra.
In this case, we conclude that retrial on remand should be limited to liability. Here, liability and damages were entirely distinct and separable. There was no dispute regarding the factual basis for the damages claimed: the loss of Arthur Kitto's left eye. Nor was there an assertion that the damages were caused by any other circumstance. See Hildyard v. Western Fasteners, supra. The liability issues posed only the question of whether any of the defendants were legally accountable for the occurrence. The evidence of damages, although not entirely objective, came principally from the plaintiffs, whereas the testimony as to liability was elicited, of necessity, from other witnesses who were either experts or persons present and conscious during the operation.
Thus, although both the responsibility for Arthur Kitto's condition and the monetary value of compensable consequences were factual matters submitted to the jury simultaneously, those issues were not interdependent. Any risk of prejudicial inferences on retrial can be obviated by treating damages as stipulated, and instructing the jury accordingly.
Judgment affirmed in part, reversed in part, and cause remanded for new trial on liability, only, as to all defendants.
BERMAN and STERNBERG, JJ., concur.