**Michael W. ARMBRUSTER,
Plaintiff-Appellant,**

v.

**Robert E. EDGAR, M.D. and Harry R. Hahn, M.D., Defendants-Appellees.**

**No. 84CA1339.**

Colorado Court of Appeals,
Div. II.

Aug. 28, 1986.

Rehearing Denied Sept. 25, 1986.

Certiorari Denied (Armbruster)
Jan. 20, 1987.

Moyer, Beal & Vranesic, John R. Vranesic, Lakewood, for plaintiff-appellant.

Pryor, Carney and Johnson, P.C., Thomas L. Roberts, Susan T. Smith, Englewood, for defendants-appellees.

VAN CISE, Judge.

In this medical malpractice case, plaintiff, Michael W. Armbruster, appeals the trial court's entry of summary judgment of dismissal on motion of defendants, Drs. Robert E. Edgar and Harry R. Hahn. We affirm.

Plaintiff dove from an embankment into a shallow drainage ditch in May 1974, and became paralyzed and quadriplegic because of a fracture of the cervical spine. He was treated at Craig Rehabilitation Hospital un-

der the care of Dr. Hahn. He was discharged in October 1974, but was reevaluated at yearly intervals through March 1981.

Plaintiff claimed he reported arm, shoulder, and neck pain over these seven years. Dr. Hahn consulted Dr. Edgar in 1977 regarding another problem, plaintiff's severe spasticity in his lower extremities, and Dr. Edgar performed a series of three operations to alleviate that problem. Dr. Edgar also reviewed Dr. Hahn's evaluations of plaintiff's pain, and the doctors concluded there was no indication of post-traumatic cystic myelopathy requiring further diagnostic testing. Drs. Hahn and Edgar advised plaintiff that his problems were psychological.

Plaintiff thereafter sought second opinions from Drs. Klapper and Boyd, who recommended a myelographic study because of possible nerve root compression. In June 1981, Dr. Boyd performed an operation to remove a bone spur and to decompress the nerve root. As a result, plaintiff claims he was relieved of all pain in his neck and upper extremities and received a fuller range of motion there.

Plaintiff brought his claims of professional negligence against Drs. Hahn and Edgar in June 1983 based on their failure to perform diagnostic testing and treat the cause of his chronic pain. Trial was set for October 22, 1984.

In April 1984, plaintiff instituted discovery by sending interrogatories to defendants. Apparently because of some scheduling difficulties, defendants' depositions were not taken until August 23 and 24, 1984. Plaintiff needed to give this information to his expert witness, Dr. Harold Ladwig from North Carolina, before Dr. Ladwig would consent to render an expert opinion.

On August 23, sixty days prior to trial, defendants filed their motion for summary judgment, alleging that plaintiff had no expert witness critical of defendants' care. On September 6, plaintiff asked for an extension of time to respond to defendants' motion pursuant to C.R.C.P. 56(f). Plain-

tiff also asked to have the trial date postponed.

On September 7, 45 days before trial, defendants filed their trial data certificate pursuant to C.R.C.P. 16 and 121. Plaintiff filed his trial data certificate 25 days late, on October 2, without requesting or receiving an extension of time.

On October 3, the court heard arguments and then denied plaintiff's motion to continue the trial date but granted plaintiff more time to oppose the summary judgment. The court also granted defendants' oral motion to strike the testimony of Dr. Ladwig for failure to comply with discovery and pretrial procedure rules.

On October 10, plaintiff filed his objection to the summary judgment motion and included what purported to be an affidavit from Dr. Ladwig critical of the care of Dr. Hahn (making no mention of Dr. Edgar). This "affidavit" was not signed by anyone. A hearing was held the next day and the court granted defendants' motion for summary judgment adopting the argument of defendants that Dr. Ladwig's testimony could not properly be considered by the court since it did not comply with C.R.C.P. 56(e).

I.

The first question is whether plaintiff showed a genuine issue of material fact through affidavits, deposition testimony, and admitted exhibits, excluding Dr. Ladwig's "affidavit," to overcome a motion for summary judgment. *See* C.R.C.P. 56(c); *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985). We conclude he did not.

■ Plaintiff testified in his deposition that he experienced pain and reported it to Drs. Hahn and Edgar. He also testified that the pain was later relieved by Dr. Boyd's surgery. Plaintiff claims this leads "to a reasonable inference of medical negligence." We do not agree.

■ It is plaintiff's burden to establish the physicians' standard of care and the

deviation from that standard. Except under circumstances not pertinent here, the precise scope of the duty is determined by expert testimony. The standard of care and skill ordinarily possessed by reasonably careful physicians practicing the same specialty under similar circumstances must be presented. *Bloskas v. Murray*, 646 P.2d 907 (Colo.1982); *Short v. Downs*, 36 Colo.App. 109, 537 P.2d 754 (1975).

Plaintiff contends a question of fact was presented by the following statement he asserts is contained in the affidavit of Dr. John Young: "[I]n the absence of significant pain it was not the standard of care to utilize myelograms or CT scans on a quadriplegic patient from 1974 to 1981." However, Dr. Young's affidavit does not contain this statement.

■ We find nothing in any of the affidavits or depositions which raises a question of fact regarding the doctors' deviation from an acceptable standard of care. The parties do disagree whether plaintiff complained of pain from 1974 to 1981, but this question alone does not create a question of professional negligence.

## II.

■ Plaintiff next contends the trial court abused its discretion by striking his expert witness' "affidavit." We disagree. Since it was not signed, it had no probative value.

Also, C.R.C.P. 121, § 1–18 requires parties to file a trial data certificate no later than 45 days prior to the date set for trial. In the event of noncompliance, the court may impose any appropriate sanction therefor. C.R.C.P. 121, § 1–18(1)(d).

Plaintiff claims the untimely endorsement of its expert witness was in large part caused by scheduling difficulties it had in August 1984 in taking defendants' deposition. The record shows that defendants received a letter from plaintiff's attorneys on July 12, 1984, requesting a date for taking depositions on August 7 and 8 or 13 and 14. Instead they were taken on August 23 and 24. Counsel had two weeks after that to get the depositions to its expert and get his opinion before the trial data certificate due date of September 7. He failed to do so.

Additionally, plaintiff did not answer or supplement his answer to defendants' interrogatories regarding expert witnesses pursuant to C.R.C.P. 26 which were delivered to plaintiff in July 1983. These facts indicate violations of C.R.C.P. 26(b)(4)(A)(i), C.R.C.P. 26(e)(1)(B), and C.R.C.P. 121. This meant defendants had almost no time before trial to investigate plaintiff's out-of-state expert.

The excluded "affidavit" was undoubtedly important to plaintiff, but we find the sanction of exclusion was well within the trial court's discretion in light of plaintiff's failure to prosecute this action in a more timely manner. *See KN Energy, Inc. v. Great Western Sugar Co., supra; Conrad v. Imatani*, 724 P.2d 89 (Colo.App.1986).

## III.

■ Plaintiff lastly contends the trial court abused its discretion in denying plaintiff's motion for continuance of the trial. We do not agree.

A trial court is vested with broad discretion in granting continuance of trial dates, *Catron v. Catron*, 40 Colo.App. 476, 577 P.2d 322 (1978), and will not be reversed absent a clear abuse of discretion. *People in Interest of J.F.*, 672 P.2d 544 (Colo.App. 1983). *See Conrad v. Imatani, supra.* We find no abuse here.

Judgment affirmed.

ENOCH, C.J., and METZGER, J., concur.