**FINANCIAL ASSOCIATES, LTD., a Colorado joint venture, Petitioner,**

v.

**G.E. JOHNSON CONSTRUCTION COMPANY, INC., Individually; Michael H. Collins, Individually; Leland B. Roberts, Individually; Collins & Roberts, Architects, Inc., Individually; George D. Morris, Individually; Lincoln-Devore Testing Laboratory, Inc., Individually; Howard C. Dutzi, Individually; and Howard C. Dutzi & Associates, Inc., Respondents.**

No. 84SC343.

Supreme Court of Colorado,
En Banc.

June 23, 1986.

Rehearing Denied Aug. 25, 1986.

Richard L. Harring, Edward J. Blieszner, Randall M. Livingston, Calkins, Kramer, Grimshaw & Harring, Denver, for petitioner Financial Associates, Ltd.

Kenneth Sparks, Barton L. Enoch, William J. Leone, Sparks, Dix, Enoch, Suthers & Winslow, Colorado Springs, for respondent G.E. Johnson Const. Co., Inc.

William H. Knapp, Knapp, Lee and York, Denver, for respondents Michael H. Collins, Leland B. Roberts and Collins & Roberts, Architects, Inc.

Edwin Strand, Strand and Meadows, Colorado Springs, for respondents George D. Morris and Lincoln-DeVore Testing Laboratory, Inc.

L. Tyrone Holt, Elsa D. Burchinow, Holt & Gebow, Denver, for respondents Howard C. Dutzi and Howard C. Dutzi & Associates, Inc.

DUBOFSKY, Justice.

We granted certiorari to review the decision of the court of appeals in *Financial Associates, Ltd. v. G.E. Johnson Construction Company, Inc.*, 694 P.2d 345 (Colo.App.1984). The court of appeals affirmed the entry of summary judgment against the plaintiff Financial Associates, Ltd., on the ground that the action was barred by the applicable statute of limitations, section 13–80–127, 6 C.R.S. (1973 & 1985 Supp.). Because the determination of when the statutory limitations period began to run against the plaintiff involves an issue of material fact, summary judgment was improper, and we reverse the decision of the court of appeals.

In March, 1973, the plaintiff contracted with one of the co-defendants, G.E. Johnson Construction Company, Inc. (Johnson), for the design and construction of a four story bank and office building in Colorado Springs. Johnson engaged co-defendants George D. Morris and Lincoln-DeVore Testing Laboratory, Inc. (Lincoln-DeVore) for soil engineering services. Johnson con-tracted for architectural services with another co-defendant, Collins & Roberts Architects, Inc. Collins & Roberts in turn contracted with co-defendant Howard C. Dutzi & Associates, Inc. (Dutzi) for structural engineering services. Construction of the building was substantially completed by July 1, 1974.

In 1978, the plaintiff noticed cracks in walls in the building's basement and a perceptible sloping or heaving of the basement floor. At the plaintiff's request, Lincoln-DeVore investigated the problem and submitted a report on January 11, 1979. The report attributed a "large amount of slab movement" to the expansion of porous soils beneath the building. The report stated that the cause of the soil expansion "quite possibly" was a broken water main in the area. Other possible causes of the soil expansion were a sprinkler system and several drywells near the building.

The Lincoln-DeVore report attributed cracking and distortion in the nonloadbearing basement partition walls to the fact that the plaintiff had constructed the partitions in a rigid manner rather than allowing them "to float with the floor slab as originally intended." Lincoln-DeVore specifically stated that "[t]he damage encountered within the basement area cannot be considered of a structural nature." It concluded that "the problems encountered during this inspection are probably not serious enough to cause a great deal of concern" and suggested that the plaintiff implement recommendations included in the report to forestall future problems.

In March and April of 1979, Howard Dutzi inspected the building at the plaintiff's request to determine why the first floor door to the two-story vault would not close. In a report dated April 11, 1979, Dutzi mentioned but dismissed building movement as the cause of the problem. He concluded that he was "completely at a loss" as to the cause of the problem although he suspected that the problem might be related to the expansive soil underneath the building.

Because the plaintiff's problems continued, it hired Chen and Associates, Inc., consulting engineers, to conduct another investigation. Chen's report, dated November 27, 1979, noted heaving of the basement slab and cracking in the slab and the walls, a result of soil expansion caused by increased moisture content. The report also mentioned that "some slight foundation movements may be attributed to approximately 20% of the observed distress."

On November 18, 1980, Lincoln-DeVore submitted a second report noting that the problems in the building were more widespread than originally thought. The report stated that in "portions of the foundation area, the footings rest directly upon expansive clays while in the remainder of the area the foundations rest on non-expansive sands." The report linked both settlement and heaving to a dramatic increase in the amount of subsurface water in the Colorado Springs area. The report stated that "[c]onstruction precautions regarding the settlement of foundations on the sand are difficult to take, but design procedures have been developed in an attempt to limit the amount of heave which a foundation would undergo." The design feature mentioned was the provision of a dead load pressure higher than the expansion potential of the clay. The report attributed some of the problems to the plaintiff's construction of the partition walls in a manner that transferred the load away from the column foundations, thereby "decreasing pressure at the footing line." The report concluded that "a large percentage of the anticipated settlement has already occurred" and that "future movement should be ... of a much smaller magnitude than the building has already experienced."

Thomas E. Summerlee and Associates, Inc., a soil and foundation engineering firm hired by the plaintiff to examine the problems in the building, detailed its investigation in a report dated August 20, 1982. The report first noted that the building had experienced about three inches of differential settling, that further settling of up to five and one-half inches might occur, and that such settling could seriously affect the building's structural integrity. The report attributed the settling to soils that became more compressible with increased depth. Identifying the cause of the problem, the report stated:

> The existing spread footing foundations have exerted stresses on the underlying soil strata which are causing consolidation of those soils.... In our opinion, the bearing soils located beneath foundation elevations are not capable of carrying the structural loads imposed by the spread footing foundations without creating future excessive settlements.

The report also noted that "[t]he present settlement of the building foundations has caused distress to the building," while distress to the partition walls in the basement was "probably due primarily to a combination of foundation settlement and heaving of the basement slab." The report concluded that to solve the settlement problem it would be necessary to transfer the structural loads down to bedrock, 86 feet below the site grade, and recommended construction of piles or columns beneath the building.

In March, 1983, the plaintiff sued defendants, alleging negligent soil testing and negligent design and construction of the building. The defendants moved for summary judgment on the basis that the action was barred by section 13–80–127, 6 C.R.S. (1973 & 1985 Supp.), which requires actions concerning improvements to real property to be brought within two years of the time when "the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in improvement which ultimately causes the injury, when such defect is of a substantial or significant nature." The district court granted the defendants' motion for summary judgment, finding that the two-year period began to run when the second Lincoln-DeVore report was submitted to the plaintiff in November, 1980.

The plaintiff appealed to the court of appeals, contending that it did not have knowledge nor could it be charged with

knowledge that would trigger the running of the limitations period until receipt of the Summerlee report in 1982. The plaintiff asserted that the question of when it knew or reasonably should have known of a defect in the improvement was a genuine issue of material fact that precluded entry of summary judgment. The court of appeals affirmed the district court's summary judgment.

## I.

Section 13–80–127, 6 C.R.S. (1973 & 1985 Supp.), provides in part that "[a]ll actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises." Subsection (1)(b) explains that "[a] claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature."

In *Criswell v. M.J. Brock and Sons, Inc.,* 681 P.2d 495, 498–99 (Colo.1984), we recognized that section 13–80–127 "distinguishe[s] discovery of the defect which 'causes the injury' from the injury itself," and that "in construction projects discovery of the physical manifestations of a defect is not necessarily concurrent in time with discovery of the defect." The two year period established by section 13–80–127 commences only when the plaintiff discovers or should have discovered that the defect causes the injury.

■ The court of appeals correctly identified the question presented here as "whether [the plaintiff] discovered, or in the exercise of reasonable diligence should have discovered, the defect which caused the injury to the building more than two years prior to the commencement of this action in 1983." 694 P.2d at 346. Resolution of this question by way of summary

judgment is appropriate only if there is no "genuine issue as to any material fact." *Jones v. Dressel,* 623 P.2d 370, 373 (Colo. 1981). An issue of fact may arise from the existence of conflicting permissible inferences from evidence accepted as true. *O'Herron v. State Farm Mutual Automobile Insurance Co.,* 156 Colo. 164, 397 P.2d 227 (1964). Furthermore, we stated in *O'Herron* that "where the undisputed evidence permits of offsetting inferences, the party against whom the motion for summary judgment is made 'is entitled to all favorable inferences which may be reasonably drawn from the evidence and if when so viewed reasonable men might reach different conclusions the motion should be denied.'" 156 Colo. at 171–72, 397 P.2d at 227 (quoting *Caylor v. Virden,* 217 F.2d 739, 741 (8th Cir.1955)).

■ The damage to the plaintiff's building is the injury for purposes of section 13–80–127. Although it is undisputed that the injury was discovered in 1978, the time of this discovery does not necessarily determine when the statute begins to run; nor does section 13–80–127 begin to run at the time of discovery of the physical processes leading up to an injury, unless at the same time a plaintiff discovers or should have discovered the *defect* that causes the injury. Under some circumstances, a plaintiff's knowledge or discovery of the manner in which an injury to an improvement is being produced may indicate a defect in the improvement and admit of no reasonable inference to the contrary. In such cases, depending on the date of the discovery, summary judgment would be appropriate. In this case, however, we cannot say that as a matter of law the plaintiff's discovery of the general nature of the physical processes leading up to the injury put it on notice of a defect in the building.

■ Three possible causes of the injury, arguably unrelated to defects in design or original construction, are indicated in the reports received by the plaintiff between January 1979 and August 1982: soil expansion, foundation settlement, and faulty con-

struction of partition walls by the plaintiff. The first mention of the possibility that the damage was caused by soil expansion was in the first Lincoln-DeVore report. Yet, that report does not suggest that the soil expansion could have been anticipated or that problems associated with soil expansion could have been avoided. To the contrary, the report suggested that the most likely cause of the soil expansion was the infiltration of an unusual amount of water from a broken city water main. Subsequent reports did nothing to dispel the impression that the soil expansion was a result of forces beyond the control of the defendants. The Chen report indicated that landscape irrigation as well as the broken water main possibly contributed to the soil expansion. In its second report, Lincoln-DeVore even more clearly distanced itself from responsibility for the damage to the building. Referring to the location of the building, the report stated:

This entire portion of Colorado Springs has apparently undergone a considerable change, in terms of subsurface water, during the recent past. Areas of soil which were originally of a low or fairly normal moisture content have risen dramatically as a result of large amounts of rain in the spring and changes in irrigation pattern in the upper basin.

It might well be that a reasonable fact finder could determine on the basis of the discussions of soil expansion in the first four reports that the plaintiff knew or should have known that its injury was caused at least in part by a defect, whether in the soil testing, the siting, the design or the construction of the building. However, in consideration of the entirety of the reports, especially the extracts referred to above, it would also be reasonable to infer that the soil expansion was not linked to a defect attributable to the defendants.

The primary focus of the courts below is on the time at which the plaintiff first learned that foundation settlement was a possible cause of its problems. On one hand, the district court and the court of appeals apparently decided that this knowledge was imparted to the plaintiff no later than the date of receipt of the second Lincoln-DeVore report in November 1980. The plaintiff, on the other hand, maintains that it was not until it received the Summerlee report on August 20, 1982, that it was aware of a "serious foundation settlement problem." Some question about this assertion may be raised by the statement in the Chen report that "slight foundation movements may be attributed to approximately 20% of the observed distress." However, as with the plaintiff's discovery that soil expansion might be a cause of its problems, its discovery that foundation settlement might be a contributing cause of its injury only caused the statute of limitations to begin to run if the discovery indicated a defect.

The plaintiff asserts that it had no knowledge that foundation movement was the result of a design defect until it received the Summerlee report. The court of appeals rejected this assertion stating that "[a]lthough the Summerlee report propose[d] some new solutions, it [did] not add any new fact relating to the nature of the defects which ... caused damage to the building." 694 P.2d at 348. Our reading of the Summerlee report persuades us that there are differences between it and the preceding reports that create conflicting reasonable inferences about the existence of a design defect associated with foundation settlement. In the first place, the discussion of foundation settlement in the reports preceding the Summerlee report is interwoven with discussion of problems with the soil immediately underlying the building. It would not be unreasonable to conclude that the settlement problem was linked to the soils problem that was in turn the product of forces and activities beyond the control of the defendants. More significantly, the second Lincoln-DeVore report suggests that the defendants took reasonable precautions against foundation settlement. In the Summerlee report, in contrast to the previous reports, the foundation settlement is attributed directly to the foundation footings that imposed loads which the soils beneath the building were

incapable of withstanding. The foundation settlement problem is not linked, as in the other reports, with the unexpected infiltration of water into the supporting soils. Finally, in both Lincoln DeVore reports and the Chen report, but not in the Summerlee report, the partitions built by the plaintiff were found to be contributing causes of the damage. The discussion of the partitions in the earlier reports creates the impression that the problems were largely the result of the plaintiff's own conduct and not of a defect in the defendants' work.

In sum, even assuming that the plaintiff knew of its injury, and might have been aware of the possible causes of its injury more than two years before bringing this action, the information contained in the reports does not so clearly point to the existence of a defect in the improvement that it can be held as a matter of law that the plaintiff should have discovered that the defect caused the injury. Because the reports could support conflicting inferences as to the plaintiff's knowledge of the existence of a causally related defect, an issue of material fact is presented and an entry of summary judgment is unwarranted.[1]

The judgment of the court of appeals is reversed and the case is remanded for return to the district court for further proceedings in accordance with this opinion.

VOLLACK, J., dissents.

ERICKSON and ROVIRA, JJ., join in the dissent.

VOLLACK, Justice, dissenting:

I disagree with the majority's conclusion that the district court erred in entering summary judgment against the petitioner. Accordingly, I respectfully dissent.

The statute of limitations involved here, section 13–80–127, 6 C.R.S. (1973 and 1985 Supp.), provides in subsection (1)(b) that a "claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature." The majority correctly notes that discovery of the injury is not necessarily concurrent in time with discovery of the defect which causes the injury. *Criswell v. M.J. Brock and Sons, Inc.*, 681 P.2d 495, 498–99 (Colo.1984). The majority further holds that the statute of limitations only begins to run when the plaintiff discovers or should have discovered that the defect causes the injury. In so ruling, the majority seems to require that the exact defect be determined before the statute of limitations begins to run.

In this case, the plaintiff knew of the injury in 1978. Subsequently, the plaintiff received five different reports which were prepared in an effort to determine the cause of the injury. Different theories were propounded by different experts, and the correct conclusion remains a matter of expert opinion. As early as January 11,

---

**1.** The conclusions of the court of appeals and the district court that summary judgment was appropriate appear to rest on a fundamental misapprehension of the concepts of injury, cause, and defect within the meaning of section 13–80–127. This misapprehension is apparent in the findings of the district court that the second Lincoln-DeVore report "notified the plaintiff that various defects appearing throughout the plaintiff's building were caused by a four and one half inch elevation differential that had developed across the building," that "the defect in the building is the injury and, as stated above, has been known at least since November, 1980," and finally that "[t]he precise mechanism causing the defect need not be known or discoverable to trigger the running of the statute." Similar confusion is reflected in

statements of the court of appeals opinion. The court states that the question to be decided by the district court was when the plaintiff's information was sufficient "as a matter of law, to constitute knowledge of the cause of the defect?" The court also stated incorrectly that "[t]he date of [the petitioner's] receipt of engineering reports informing it of the cause of the injury to the building causes the statute of limitation to begin to run." Finally, the court of appeals supported its holding that the statute of limitations began to run at the time the Lincoln-DeVore report was received by the petitioner because that report, together with the other reports, "contained information sufficient, as a matter of law, to constitute notice of the cause of the defects."

1979, plaintiff received a report attributing the cause of the injury to the expansion of porous soils beneath the building and plaintiff's construction of partition walls in the basement. By the November 27, 1979, report, plaintiff was alerted that "some slight foundation movements may be attributed to approximately 20% of the observed distress." Surely, these reports imparted an awareness to plaintiff that possible defects existed in the building. Plaintiff contends it was not until the receipt of the last report, which was prepared within the two year limitations period, that it discovered the "defect" in the building, even though the report reiterated a possible cause of the injury which was mentioned in previous reports.

If knowledge of the specific cause of an injury is the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests. *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976, 980 (1981). Based upon the first four reports received by plaintiff in this case, I would conclude the plaintiff had sufficient information to cause a reasonable person to inquire further as to the existence of a claim for relief. The accrual of a claim for relief does not await the awareness by the injured party that an injury was negligently inflicted, nor does it await the acquisition of knowledge of facts which would alert a reasonable person to suspect that a legal duty to him had been breached. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). I dissent from the majority's conclusions because I do not believe it is necessary that the injured party be fully aware of the exact defect or its seriousness before a claim for relief arises. *Tamblyn v. Mickey & Fox, Inc.*, 39 Colo.App. 319, 568 P.2d 491, 493 (1977), *rev. on other grounds*, 195 Colo. 354, 578 P.2d 641 (1978).

Normally, the issue of whether the statute of limitations bars a particular claim is a factual question. *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970); *Davis v.*

*Bonebrake*, 135 Colo. 506, 313 P.2d 982 (1957). However, based upon the undisputed evidence contained in the reports prepared for plaintiff, I would conclude as a matter of law that the claim for relief arose no later than the receipt of the second Lincoln-DeVore report in November of 1980. Despite plaintiff's contention that it did not know of the specific defect until the August 1982 Summerlee report, based on the four previous reports, I would conclude that at least in the exercise of reasonable diligence the plaintiff should have discovered the defect in the building. Instead, plaintiff waited over two years to have the fifth report prepared. The law aids the vigilant, and not those who slumber on their rights.

In effect, the majority's conclusion that the statute of limitations does not begin to run until the plaintiff discovers or should have discovered the specific defect that causes the injury may preclude the commencement of the limitations period in any actions of this kind. To defeat the statute of limitations defense, the majority concludes that a plaintiff needs only to raise the issue of when the specific defect which caused the injury was discovered. Even where the evidence is undisputed, the mere existence of possible "offsetting inferences" would defeat a summary judgment motion based on the statute of limitations defense. Undoubtedly, such an argument could be made in most cases.

I conclude the two year statute of limitations bars the maintenance of this action, and further conclude there is no genuine issue of fact involved in such a determination. I would affirm the conclusions of both the trial court and the court of appeals.

I am authorized to say that Justice ERICKSON and Justice ROVIRA join in this dissent.