Betty SALAZAR, Plaintiff–Appellee and Cross–Appellant,

v.

AMERICAN STERILIZER COMPANY, Defendant–Appellant and Cross–Appellee.

No. 98CA1630.

Colorado Court of Appeals, Div. II.

March 16, 2000.

As Modified on Denial of Rehearing June 8, 2000.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Buchanan, Jurdem & Zulauf, P.C., Karen M. Zulauf, Jessica L. West, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Rossi, Cox, Kiker & Inderwish, P.C., Marc Kaplan, Aurora, Colorado; McDermott & Hansen, William James Hansen, Denver, Colorado; Bragg & Baker, P.C., John Thomas Baker, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Mark S. Mandell, Ned Miltenberg, Washington, D.C., for Amicus Curiae Association

of Trial Lawyers of America and the Colorado Trial Lawyers Association.

Zarlengo, Mott, Zarlengo & Winbourn, P.C., Reed L. Winbourn, Denver, Colorado; Skadden, Arps, Slate, Meagher & Flom LLP, Bert L. Wolff, Steven F. Napolitano, New York, New York, for Defendant–Appellant and Cross–Appellee.

Campbell, Latiolais & Ruebel, P.C., Jeffrey Clay Ruebel, Denver, Colorado, for Amicus Curiae Colorado Defense Lawyers Association.

Opinion by Judge MARQUEZ.

In this toxic tort action, defendant, American Sterilizer Co., appeals the judgments entered on jury verdicts finding (1) that plaintiff, Betty Salazar, filed her claims within the two-year statute of limitations set forth in § 13–80–106, C.R.S.1999, and (2) that defendant was negligent, and awarding plaintiff damages. Plaintiff cross-appeals complaining of the trial court's ruling that Colorado's non-party statute, § 13–21–111.5, C.R.S.1999, is constitutional and the court's denial of recovery for certain costs. We affirm.

Beginning in 1977, plaintiff worked as a central sterilizing technician at a hospital in Montrose. In the fall of 1983, the hospital purchased and placed into service a "Portagas" ethylene oxide sterilizer manufactured by defendant. The hospital used the Portagas sterilizer until 1989 when it purchased from defendant a new ethylene oxide sterilizer called the "Eagle."

When operating the sterilizers, plaintiff was exposed to ethylene oxide, a toxic chemical that causes neurocognitive defects and nerve damage. She was later diagnosed as having peripheral neuropathy.

On March 31, 1995, plaintiff, *pro se*, filed a verified complaint against defendant and others, asserting, *inter alia*, that the Portagas sterilizer was placed into service in 1983 and that she sterilized surgical instruments approximately five days per week. She also alleged that as a result of defendant's negligence, she had incurred personal injuries allegedly caused by exposure to ethylene oxide from use of the Portagas sterilizer. On July 12, 1995, plaintiff amended her complaint to allege that the Eagle sterilizer was placed into service in September 1989, and that she sterilized surgical instruments from the time the Portagas sterilizer was placed into service until April 1993.

Defendant asserted that the statute of limitations barred the claim. A separate trial was held on that issue. Following a verdict in plaintiff's favor on that issue, a second trial was held on liability for negligence and damages. The jury returned a verdict in favor of plaintiff and awarded her $339,213 for non-economic losses; $565,355 for economic losses; and $1,356,852 for physical impairment. The jury found that defendant was 66 percent responsible for plaintiff's injuries, damages, and losses. The jury also found that two non-parties were responsible for the remaining damages: the hospital was 32 percent responsible and a person who had inspected the sterilizers was 2 percent responsible. The trial court then entered judgment against defendant for 66 percent of the total damages, or $1,492,537.20.

Although defendant filed post-trial motions for judgment notwithstanding the verdict, a new trial, or remittitur, the trial court's order denying its motions was not issued until the 60–day period provided by C.R.C.P. 59(j) had expired. However, plaintiff consented to a remittitur, and the judgment was subsequently reduced to $1,093,422 plus prejudgment interest of $916,426 and costs of $114,005.88.

I.

Defendant first contends that the trial court committed reversible error in denying judgment in its favor based on the statute of limitations. We are not persuaded.

■ As a preliminary matter, to the extent defendant asserts that the court erred in denying its motion for summary judgment based on the statute of limitations, such an order is not appealable. *See Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo. 1996).

## A.

As to the applicable standard for determining when the statute of limitations begins to run, we reject defendant's contention that inquiry notice triggers the discovery rule.

Defendant concedes that § 13–80–106 governs. In relevant part, that statute provides that all actions brought against a manufacturer or seller of a product shall be brought within two years after the claim for relief arises.

In Colorado, the general discovery rule provides that a cause of action for injury to a person shall accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence. Section 13–80–108(1), C.R.S. 1999. A claim for relief does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action. *Miller v. Armstrong World Industries, Inc.*, 817 P.2d 111 (Colo.1991).

Here, the parties agree that the statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another. *See Miller v. Armstrong World Industries, Inc., supra; Mastro v. Brodie*, 682 P.2d 1162 (Colo.1984).

Nevertheless, defendant relies on cases from other jurisdictions to support its position that inquiry notice triggers the discovery rule. *See Estate of Montag v. T H Agriculture & Nutrition Co.*, 509 N.W.2d 469 (Iowa 1993) (inquiry notice); *Martinez v. Showa Denko, K.K.*, 125 N.M. 615, 964 P.2d 176 (N.M.App.1998) (information known by plaintiff concerning a "possible connection" between her condition and the product, sufficient to activate commencement of statute of limitations); *Schiele v. Hobart Corp.*, 284 Or. 483, 587 P.2d 1010 (1978) (the statute of limitations begins to run when a plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists).

However, suspicion of a possible connection does not necessarily put a reasonable person on notice of the nature, extent, and cause of an injury. The focus is on plaintiff's knowledge of facts rather than the discovery of applicable legal theories. *Miller v. Armstrong World Industries, Inc., supra; Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152 (Colo.App. 1995).

In *Financial Associates, Ltd. v. G.E. Johnson Construction Co.*, 723 P.2d 135 (Colo.1986), the supreme court held that even if the plaintiff knew of its injury and might have been aware of the possible causes of its injury, the information contained in investigative reports did not so clearly point to the existence of a defect for the court to hold, as a matter of law, that plaintiff should have discovered the defect that caused the injury.

Consequently, we reject defendant's contention that inquiry notice triggers the discovery rule.

## B.

Defendant nevertheless contends that, by January 1993, plaintiff knew of her claim, and because this was more than two years before she filed suit, the trial court erred in denying defendant judgment as a matter of law. We conclude that this issue was properly submitted to the jury.

While the statute of limitations question was raised in defendant's motion for a directed verdict, such a motion should be granted only in the clearest of cases. A court considering such a motion must view the evidence and all reasonable inferences arising legitimately from it in the light most favorable to the non-movant. *Huntoon v. TCI Cablevision of Colorado, Inc.*, 969 P.2d 681 (Colo.1998).

The time when a plaintiff discovered, or through the use of reasonable diligence should have discovered, the negligent conduct is normally a question of fact that must be resolved by the trier of fact. *Mastro v. Brodie, supra; Morris v. Geer*, 720 P.2d 994

(Colo.App.1986). However, if the undisputed facts clearly show that a plaintiff discovered, or reasonably should have discovered, the negligent conduct as of a particular date, the issue may be decided as a matter of law. *Winkler v. Rocky Mountain Conference of United Methodist Church, supra.*

Here, it is undisputed that plaintiff was exposed to ethylene oxide between 1983 and 1993, and that she developed polyneuropathy. In the trial on the statute of limitations issue, a number of exhibits were introduced into evidence. In a letter dated January 13, 1993, plaintiff's neurologists agreed that it was possible that ethylene oxide caused her polyneuropathy, but recommended other testing because there were also other possible causes. The neurologists also opined that, if ethylene oxide was the cause, decreasing plaintiff's exposure to ethylene oxide should also return her symptoms to normal.

In February of 1993, plaintiff's neurologists noted in their report that if her polyneuropathy resulted from chemical exposure, her symptoms would dissipate over the next 12 to 18 months. Because of plaintiff's differential diagnosis, however, the neurologists wrote that they were "not sure why she has this small neuropathy" and that time would help them "understand her neuropathy better." One of the neurologists confirmed these statements at trial.

In March of 1993, the orthopedic surgeon, in response to a request for a narrative report outlining the cause and etiology of plaintiff's symptoms, informed the insurance carrier by letter that "[w]e still do not have hard evidence to identify the cause and etiology of her symptoms. Her diagnosis is peripheral polyneuropathy. We simply do not know the cause yet." ·

The orthopedic surgeon then wrote the neurologists inquiring into the cause of plaintiff's condition. On April 2, 1993, a neurologist responded to the orthopedic surgeon stating that:

> The conclusion I came to was that she could have had a polyneuropathy based upon her ethylene oxide exposure. However, these tend to resolve after exposure in approximately 12–24 months.... I

think time may help us understand her neuropathy better....

After receiving the neurologist's letter, the orthopedic surgeon wrote a second letter on April 26, 1993, to the hospital's insurance carrier. There, the surgeon stated that "it seems to be clearly stated that it is [the neurologist's] opinion that [plaintiff's] polyneuropathy resulted from ethylene oxide exposure."

However, the April 2, 1993, letter stated that plaintiff "could" have had a polyneuropathy. Further, the neurologist who wrote the April 2, 1993 letter testified at trial that he did not intend to express to the orthopedist that he believed that plaintiff's injury was caused by ethylene oxide.

A toxicologist testified that he first saw plaintiff in August of 1993. Sometime thereafter, the toxicologist requested additional documentation from the hospital and formed an opinion that she had an ethylene oxide-induced toxic peripheral neuropathy. Plaintiff testified that on September 2, 1993, this toxicologist informed her that her condition was caused by ethylene oxide and that she was relieved that somebody had finally found an answer to what was wrong with her.

Viewing the evidence in the light most favorable to plaintiff, we conclude that there was evidence to support a finding that plaintiff proceeded with reasonable diligence and that she neither knew nor should have known until September 1993 the nature, extent, and cause of her symptoms. Thus, we conclude that the motion for directed verdict was properly denied.

### C.

Defendant next contends that plaintiff's judicial admissions also mandated judgment in its favor. We disagree.

■ A judicial admission is a formal, deliberate declaration that a party or his or her attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute. *Kempter v. Hurd,* 713 P.2d 1274 (Colo.1986).

■ Judicial admissions are binding on the party who makes them, are evidence against such party, and may furnish the basis for a verdict. However, the alleged admission must also be unequivocal. *Anderson v. Watson*, 929 P.2d 6 (Colo.App.1996), *aff'd on other grounds*, 953 P.2d 1284 (Colo.1998).

### 1.

■ Defendant asserts that plaintiff's original complaint alleged that she knew of her claim in April 1993. We do not agree with defendant that the trial court improperly disregarded this allegation.

Plaintiff, *pro se*, filed her original complaint which alleged in pertinent part:

> On April 26, 1993, [the orthopedic surgeon] wrote a letter to Memorial's Worker's Compensation carrier, stating that Plaintiff's symptoms were caused by polyneuropathy brought about by exposure to ethylene oxide.

However, plaintiff's subsequent amended complaints did not contain this allegation.

Further, we do not view this statement as a binding judicial admission that plaintiff knew of her claim in April 1993 for purposes of a motion for directed verdict.

As the preceding discussion indicates, the evidence must be viewed in the light most favorable to plaintiff. Plaintiff's allegation is not an unequivocal statement that she knew the nature and extent of her injury, and that the injury was caused by the wrongful conduct of others. *See Miller v. Armstrong World Industries, Inc., supra; Mastro v. Brodie, supra.* Further there is no indication that the allegation was made for the purpose of dispensing with proof on this issue. *See Kempter v. Hurd, supra.*

Therefore, the trial court did not err in determining that plaintiff's allegation did not constitute a binding judicial admission.

### 2.

■ We also reject defendant's contention that plaintiff made a judicial admission during closing argument.

At defendant's request, the jury was instructed regarding a presumption. During closing argument, plaintiff's attorney repeated the instruction:

> If you find that Ms. Salazar swore that the facts in her original complaint were true and correct to the best of her information, knowledge, and belief, then the law presumes that she read and understood the language. You must consider this presumption, together with all the other evidence in the case, in determining whether or not the facts in her complaint are true.

Plaintiff's attorney then commented: "And I think that's a true statement: To the best of her knowledge, information, and belief, those facts were true."

Outside the presence of the jury, defendant argued that these statements constituted a judicial admission. The trial court denied defendant's motion, reasoning that the emphasis of plaintiff's argument was based upon her best knowledge, information, and belief.

While we do not rule on the propriety of the court's instruction regarding a presumption, the record supports the trial court's determination that plaintiff's assertion was not a judicial admission, but rather, an argument that her certification was true to the best of her knowledge, information, and belief.

Thus, we perceive no abuse of discretion.

### II.

■ Defendant further contends that the court's opening charge to the jury, its instruction at the end of trial, and plaintiff's ensuing argument to the jury concerning the legal effect of the jury's findings were highly prejudicial and, therefore, constitute reversible error. We disagree.

Here, in the trial on the statute of limitations, defendant moved in limine to bar reference to the legal effect that the jury's findings of fact would have. The trial court denied the motion and, in its opening charge, informed the jury that it was going to decide when plaintiff knew or should have known of the cause of her illness. It also stated that:

> The significance of that question is that if the claim is not brought within two years

of when the plaintiff knew or should have known of that injury and the cause of the injury, then her claim is barred and she cannot prevail on her claim. That's the question that ultimately this jury's going to decide.

At the end of the trial, the jury was also instructed that defendant asserts "that the Plaintiff's claims were not brought within two years of when Plaintiff knew or reasonably should have known that she had been injured and the cause of that injury. If the Plaintiff's claims were not filed within that two-year period, then this defeats Plaintiff's claims."

During closing argument, plaintiff's counsel reminded the jury that the decision whether plaintiff's case proceeds "is your decision."

Defendant does not contend that the court's instructions misstated the law. To the extent that defendant is asserting that such statements invoked sympathy, the jury was instructed that it must not be influenced by sympathy or prejudice for or against any party in the case. Defendant has failed to provide any indication that the jury disregarded this instruction. *See People v. Dunlap*, 975 P.2d 723 (Colo.1999).

We also reject defendant's contention that *Avery v. Wadlington*, 186 Colo. 158, 526 P.2d 295 (1974), and *Simpson v. Anderson*, 186 Colo. 163, 526 P.2d 298 (1974), compel a different conclusion. In both cases, the supreme court held that it was reversible error to inform the jury as to the operation of the comparative negligence statute or the effect of its percentage findings on the ultimate outcome.

Later, however, the General Assembly amended the comparative negligence statute to require that juries be instructed on the ultimate effect of their findings. *See* Colo. Sess. Laws 1975, ch. 152, § 13–21–111(4), at 570; *Mountain Mobile Mix, Inc. v. Gifford*, 660 P.2d 883 (Colo.1983). Although the General Assembly repealed § 13–21–111(4), *see* Colo. Sess. Laws 1986, ch. 107, § 13–21–111(4), at 679, it readopted a similar provision in 1987. *See* § 13–21–111.5(5), C.R.S. 1999.

Thus, while both the decisions relied upon by defendants and the statute later adopted by the General Assembly are not directly applicable to the issue presented here, that statute reflects a general public policy to disclose to juries the effect that their deliberative decisions will have.

Consequently, we perceive no error in the court's instructions.

### III.

Asserting that plaintiff's experts had no valid or reliable exposure data and that the causation opinions of plaintiff's experts are not generally accepted, defendant next contends that it was error for the trial court to admit the testimony of plaintiff's experts on causation. We reject these contentions.

CRE 702 provides that a qualified expert may testify in the form of an opinion if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.

■ CRE 702 calls for a two-tiered analysis. A court must first determine whether the proffered expert testimony will be helpful to a fact finder. If so, the court must then decide whether the witness serving as the conduit for such information is competent to render an expert opinion on the subject in question. *Brooks v. People*, 975 P.2d 1105 (Colo.1999); *Huntoon v. TCI Cablevision of Colorado, Inc., supra*.

■ Absent a showing of an abuse of discretion, a trial court's decision to allow a witness to testify as an expert will not be disturbed on appeal. *Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631 (Colo.App. 1998).

Here, the trial court denied defendant's motion in limine to exclude the expert testimony. Implicit in its determination was that the expert testimony was necessary to aid the jury in deciding the issue of causation.

Defendant's post-trial motions, alleging that the medical literature concerning ethylene oxide exposure did not reasonably support the conclusion that it caused non-reversible neuropathy, were deemed denied.

## A.

■ While defendant asserts that none of plaintiff's experts is a neurologist or neurotoxologist and that the experts are not experts on ethylene oxide, such observations do not preclude their testimony. One expert had seen 50 to 60 patients with exposure to ethylene oxide. The other two familiarized themselves with the literature in ethylene oxide poisoning and methodically reviewed plaintiff's condition to eliminate other causes.

## B.

■ We also reject defendant's contention that plaintiff's experts had no valid or reliable exposure data. In this regard, defendant points to evidence of periodic monitoring tests that indicated compliance with Occupational Safety and Health Administration (OSHA) standards when the equipment was tested and that the monitoring results were not made available to plaintiff's experts.

To comply with standards concerning ethylene oxide established by OSHA, the hospital hired Hospital Shared Services to monitor periodically the level of the gas in central sterilizing. While Hospital Shared Services' records include some evidence of compliance with OSHA standards, they also reveal that there were incidents of leakage and times when the amounts of ethylene oxide in the central sterilizing room exceeded OSHA standards.

In addition, an industrial hygienist testified that, when opening the door on the sterilizing machines, exposure levels reached 100 to 200 parts per million (ppm), and when a tank was changed, exposure ranged from 100 to 300 ppm. The OSHA standard was 1 ppm.

Further, plaintiff's experts were provided information concerning the length of time that she had worked with the sterilizers and that on a daily basis the packaged instruments that plaintiff handled emitted ethylene oxide after they had been sterilized. They also knew that the hospital's preventive maintenance contractor, who serviced the sterilizers, found leaks in the Portagas and Eagle sterilizers and that the tanks that stored the ethylene oxide emptied too quickly.

*Allen v. Pennsylvania Engineering Corp.*, 102 F.3d 194 (5th Cir.1996), upon which defendant relies, is distinguishable. There, the opinions of plaintiff's experts were primarily based on the affidavit of a co-worker and on extrapolations concerning ethylene oxide handling where plaintiff had worked based on conditions in other hospitals in the 1970's. Here, plaintiff's experts had much more reliable information concerning plaintiff's exposure to ethylene oxide.

## C.

■ We also reject defendant's contention that plaintiff's causation opinions are not generally accepted. Defendant asserts that scientific and medical literature demonstrate that if plaintiff's condition was caused by ethylene oxide, she should have recovered virtually 100% after her exposure had ceased for a period of time. Assuming that a general acceptance analysis is applicable here, we reject defendant's contention. *See Brooks v. People, supra* (the general acceptance standard applies only to novel scientific devices and processes involving the manipulation of physical evidence).

■ General acceptance does not require absolute validity or scientific unanimity. Rather, all that is required is that the theory be accepted in a reasonably inclusive manner. *Lindsey v. People*, 892 P.2d 281 (Colo. 1995); *Colwell v. Mentzer Investments, Inc., supra*.

In the present case, the record includes a study examining 12 nurses and operating technicians who had developed neurological symptoms after being exposed to ethylene oxide. While the numbness in all the subjects decreased over the following year, seven experienced residual decreased sensation and grip weakness despite removal from ethylene oxide treated products.

Further, one of plaintiff's experts, who had treated between 50 and 60 people for ethylene oxide exposure, explained that, if a person is severely poisoned, he or she may develop motor changes such as weakness, inability to use one's hands, and inability to walk, and even become bedridden. He noted

that plaintiff has a continuing burning and discomfort in her feet that causes her to walk in a very unusual way and opined that plaintiff's condition is probably permanent.

Although defendant's experts offered testimony suggesting that peripheral neuropathies tend to resolve after exposure to ethylene oxide is terminated, defendant did not offer any scientific or medical studies that contradicted the results of the study of the 12 nurses and technicians. Even a defense expert stated that "there's clearly evidence with exposure to a variety of toxins, including this one, that you can have a permanent deficit."

Consequently, the trial court did not abuse its discretion in admitting expert testimony on the causation issue.

## IV.

■ Defendant also contends that it was reversible error for the trial court to deny a new trial based on plaintiff's improper argument concerning the *pro rata* liability statute. We are not persuaded.

In her closing argument, plaintiff's counsel stated:

> [Y]ou need to understand that to the extent that you place fault on [the hospital] or [one non-party] or [another non-party] or even Betty, Betty does not recover money for the amounts that you designate to those parties.

In a bench conference, defendant asserted that it was improper for plaintiff to inform the jury on what the net result would be with the non-parties. The court ruled that, under § 13–21–111.5(5), the jury was entitled to be told, that if it found plaintiff to be 50 percent at fault or more, she does not recover, but the court distinguished that from informing the jury that, if it found that any of the non-parties were liable, plaintiff's recovery would be reduced. We need not decide whether the court was correct in this ruling.

Plaintiff's counsel asked the court if she could discuss the allocation of fault from the perspective of defendant in terms of percentages. The court responded that "I'll allow you to say if you find her damages to be X and you find [defendant] to be 80 percent

responsible then she'll get 80 percent." Defendant's counsel did not object to the trial court's ruling and requested only that the court instruct the jury to ignore the last comment. The trial court instructed the jury in accordance with defendant's request.

Plaintiff's counsel subsequently described a number of scenarios to the jury including possible awards of $100,000 and defendant's 50 percent responsibility, a million dollar award and defendant's 90 percent responsibility, and a $1,656,700 award and non-party responsibility of 15 percent. Defendant did not object to these arguments.

■ A trial court must grant a new trial if it finds that passion, prejudice, or bias has influenced the verdict. *Burns v. McGraw–Hill Broadcasting Co.*, 659 P.2d 1351 (Colo. 1983); *Martin v. Principal Casualty Insurance Co.*, 835 P.2d 505 (Colo.App.1991).

■ If a party fails to make a contemporaneous objection to closing argument, objection to its propriety is waived. *Combined Communications Corp. v. Public Service Co.*, 865 P.2d 893 (Colo.App.1993).

Here, defendant's counsel did not object to the trial court's ruling or to the questions and arguments that followed from plaintiff's counsel. Thus, denial of defendant's motion for a new trial was not reversible error.

## V.

We also reject defendant's contentions that plaintiff's appeals to bias and prejudice required a new trial.

### A.

■ Defendant first seeks a new trial because plaintiff stated during closing argument that "Amsco's the company that has made Betty Salazar go through two trials to get justice." We disagree.

Here, to remedy the alleged prejudice, defendant requested that the jury be instructed that it is entitled to defend a lawsuit. The trial court then instructed the jury that plaintiff brought this lawsuit and that the last trial was on what information plaintiff had, when she had it, and whether, based on that

date, her case was time-barred. The trial court further instructed the jury that defendant had a right to assert that defense and it should not infer anything from that.

Because we presume that the jury followed the court's instruction, a new trial is not warranted on this basis. *Vallejo v. Eldridge,* 764 P.2d 417 (Colo.App.1988).

### B.

■ Defendant also contends that plaintiff asserted that it duplicitously changed its defense from the statute of limitations to the lack of causation between her injuries and exposure to ethylene oxide. However, because defendant did not object to these statements, this contention was not properly preserved for our review. *See Combined Communications Corp. v. Public Service Co., supra.*

### C.

■ Additionally, we reject defendant's assertion that plaintiff's reference to defendant as a big company with very large resources warrants a new trial.

■ Although defendant did not object to plaintiff's statement during closing argument, the trial court had previously granted defendant's motion *in limine* to avoid any reference to defendant's profit or financial condition. Thus, we reject plaintiff's contention that defendant did not properly preserve this issue for our review. *See Bennett v. Greeley Gas Co.,* 969 P.2d 754 (Colo.App.1998).

■ Because they go outside of the record to appeal to passion and prejudice, statements of counsel regarding a defendant's ability to pay can be sufficient to warrant granting a new trial. *Greene v. Julius Lefkowitz & Co.,* 470 P.2d 586 (Colo.App.1970) (not selected for official publication).

Here, defense counsel stated in closing argument that one of plaintiff's experts was a professional witness because he charged $625 an hour for his time. Plaintiff in rebuttal responded that:

> [Defense counsel] was very critical of the costs that some of the experts charged Mrs. Salazar. But the truth of the matter is that if you're going to go up against Amsco, you have to hire the best. They're a very big company. They have very large resources. [The expert] charges a lot of money, he does. He also works for the EPA. He also works for OSHA. He also consults with the United Nations. He's expensive.

We conclude that the response given was reasonable. *See Halliburton v. Public Service Co.,* 804 P.2d 213 (Colo.App.1990)(when a defendant opens the door on a subject by its argument, it is permissible for plaintiff's counsel to respond).

### D.

■ Nor is a new trial required because the trial court allowed evidence or comment on fear of cancer.

■ To recover for emotional distress arising from a fear of an increased risk of cancer recurrence, the fear of future consequences must be reasonable. Reasonableness is determined from all of the facts and circumstances presented in evidence at trial. *Boryla v. Pash,* 937 P.2d 813 (Colo.App. 1996), *rev'd on other grounds,* 960 P.2d 123 (Colo.1998).

Here, because it initially found that plaintiff did not have cancer, the trial court granted defendant's motion *in limine* to exclude any reference to plaintiff's fear of cancer. However, relying on *Boryla v. Pash, supra,* the trial court reversed its ruling during trial. It noted that plaintiff had been diagnosed with cancer and found that there was a reasonable basis for plaintiff's fear of cancer.

On direct examination, plaintiff's medical expert testified without objection that plaintiff's fear of cancer was reasonable in part because of the length of her exposure and that ethylene oxide was a known carcinogen.

On cross-examination, defendant questioned the expert on whether the likelihood of a malignancy as a result of ethylene oxide exposure was extremely low. Further, defendant offered as an exhibit certain OSHA regulations stating that to comply with 29 C.F.R. Part 1910 (1994), OSHA requires em-

ployers to post a warning containing the following:

DANGER
ETHYLENE OXIDE
CANCER HAZARD AND REPRODUCTIVE HAZARD

Thus, the record supports the trial court's determination that there was a reasonable basis for admitting evidence regarding plaintiff's fear of cancer.

### E.

■ We also reject defendant's contention that plaintiff's argument that defendant had a duty to retrofit one of the sterilizers with later-developed safety devices warrants a new trial.

During the motion *in limine* hearing, defendant's counsel relied on *Romero v. International Harvester Co.*, 979 F.2d 1444 (10th Cir.1992), to support its position that it had no duty to retrofit a product that was not defective. While plaintiff's counsel agreed with defendant's interpretation of the law, she argued for an instruction stating that the machine should have been recalled. The court accepted plaintiff's position that she would not discuss a duty to recall or retrofit until and unless she presented evidence that there was knowledge of the defect at the time of manufacture.

The issue was not mentioned again until plaintiff's counsel referred to retrofitting in her closing argument. At one point, she stated:

A different decision could have been made right here in 1981. Let's retrofit the Portagas or let's stop selling it. A different decision could have been made in 1981, 1982, and in 1983. And if a different decision had been made here or even here or here, Betty Salazar wouldn't have a peripheral neuropathy from ethylene oxide because the Portagas would have never been used at [the hospital].

Defendant did not make a contemporaneous objection to plaintiff's statements, and we conclude that the lack of such an objection prevented the trial court from timely addressing the impropriety of the argument or correcting any error. *See Combined Com-*

*munications Corp. v. Public Service Co.*, *supra.*

### F.

■ Nor did the trial court err in denying defendant's motion for directed verdict on plaintiff's negligence claim.

■ To recover for negligence, a claimant must prove that the alleged tortfeasor owed the claimant a duty, that there was a breach of that duty, that an injury was proximately caused by the breach, and that the plaintiff suffered damages. *Boryla v. Pash, supra.*

Here, in denying defendant's motion, the trial court found that the evidence supported plaintiff's position that a potential problem was foreseeable and that there was an indication that exposure to a gas, which has certain potential impacts upon the human body, caused plaintiff's condition. As noted, evidence was presented of leakage, inadequate ventilation including the need to provide a hood to ventilate the Portagas, and the need to replace the Portagas.

The evidence, viewed in a light most favorable to plaintiff, supports the trial court's conclusion that a verdict could be rendered in favor of plaintiff. Consequently, the trial court did not err in denying defendant's motion for a directed verdict on this claim.

### VI.

■ Asserting that the jury's award of manifestly excessive damages was motivated by bias and prejudice, defendant also contends that a new trial is mandated. We disagree.

■ Absent a finding that passion, prejudice, or bias influenced the verdict, the trial court may properly deny a new trial on the condition that the plaintiff agree to a remittitur of the amount of damages found to be excessive. *Martin v. Principal Casualty Insurance Co., supra.*

Here, defendant requested a remittitur. Plaintiff accepted the remittitur, and the court authorized it. Thus, a new trial is not required on this basis.

## VII.

We also disagree with plaintiff's contentions on cross-appeal.

### A.

■ First, she contends that §§ 13–21–111.5(2), C.R.S.1999, and 13–21–111.5(3), C.R.S.1999, are unconstitutional as applied if the non-party hospital-employer designated by the defendant for apportionment of fault is immune from suit under the workers' compensation law. Thus, she asserts that the statute violates her rights to procedural and substantive due process because § 13–21–111.5 permits a product manufacturer to reduce its damage liability by invoking the workers' compensation immunity of the employer. We disagree.

Section 13–21–111.5 provides that, in civil actions, plaintiffs and defendants may designate non-parties as being wholly or partially at fault and authorizes the finder of fact to consider the percentage of a non-party's negligence or fault in apportioning ultimate liability. *Barton v. Adams Rental, Inc.*, 938 P.2d 532 (Colo.1997).

■ Procedural due process requires that a party be given notice and an opportunity to be heard. It also requires a fundamental fairness in procedure. *Nicholas v. North Colorado Medical Center, Inc.,* —— P.2d —— (Colo.App. No. 98CA1407, Dec. 1999) 1999 WL 1128662. Substantive due process requires that legislation be reasonable and not arbitrary or capricious. *Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982).

In support of her constitutional arguments, plaintiff relies on *Newville v. State,* 267 Mont. 237, 883 P.2d 793 (1994); *Plumb v. Fourth Judicial District Court,* 279 Mont. 363, 927 P.2d 1011 (1996); and *Best v. Taylor Machine Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997). She contends that allocation of fault to an immune non-party employer in Colorado lacks adequate procedures to provide for fair apportionment of fault and notes that the non-party employer is not a party to the lawsuit, has not formally appeared in the proceeding, and is not represented by counsel. Thus, the employer has no incentive to defend itself from fault, and the plaintiff's attorney is unable to defend the non-party adequately while representing the plaintiff. Without representation, plaintiff asserts, the non-parties are likely to be assigned a disproportionate share of liability resulting in a reduced recovery to plaintiff. We reject these premises.

### 1.

Section 13–21–111.5(3)(b), C.R.S.1999, provides that fault of a non-party may be considered if the defending party gives notice that a non-party was at fault within ninety days following commencement of the action unless the court grants a longer period. The notice must include the non-party's name, address, and identification and a brief statement of the basis for believing the non-party to be at fault. Additional provisions are included for licensed health care professionals.

Plaintiff here had an opportunity before, during, and after trial to challenge the admission of evidence related to the hospital's proportion of fault. Consequently, plaintiff was provided notice and an opportunity to be heard. *Bourie v. Department of Higher Education,* 929 P.2d 18 (Colo.App.1996). Thus, we reject her procedural due process challenge to § 13–21–111.5. *See Barton v. Adams Rental, Inc., supra* (liability may only be apportioned between a defendant and designated non-party when admissible evidence has been presented that the non-party contributed to the plaintiff's injury).

### 2.

■ In the absence of deprivation of a fundamental right, the applicable test for reviewing a substantive due process challenge to a statute is the rational basis standard of review. *Ferguson v. People,* 824 P.2d 803 (Colo.1992). Under this test, a statute is presumed to be constitutional, and the burden is on the party challenging the statute to establish that the statutory provision lacks a rational relationship to a legitimate governmental interest. *Dove Valley Business Park Associates, Ltd. v. Board of County Commissioners,* 923 P.2d 242 (Colo. App.1995) *aff'd,* 945 P.2d 395 (Colo.1997).

In *Barton v. Adams Rental, Inc., supra,* the supreme court confirmed that the *pro rata* liability statute was intended to cure the perceived inequity under the common law concept of· joint and several liability under which wrongdoers could be held fully responsible for a plaintiff's entire loss, despite the fact that another wrongdoer, who was not held accountable, contributed to the result. *See Brochner v. Western Insurance Co.,* 724 P.2d 1293 (Colo.1986)(the principle of proportionate fault adopted by the General Assembly represents a rational and equitable approach to the problem of allocating ultimate responsibility between or among joint tortfeasors for the payment of damages to an injured party); *see also In re Air Crash Disaster at Stapleton International Airport,* 720 F.Supp. 1465 (D.Colo.1989)(statutory effect of shifting loss caused by an immune tortfeasor to the plaintiff is rationally related to the legitimate government interest in requiring defendants to pay no more than ·their judicially determined share of the loss).

In light of this authority, we agree with the trial court's decision rejecting plaintiff's substantive due process challenge.

### 3.

For the reasons set forth above, we also reject plaintiff's related contention that reduction of liability violates an employee's right to equal protection of the law.

### 4.

Nor are we persuaded by the authorities cited by plaintiff. In *Newville v. State, supra,* the Montana Supreme Court held that the state's apportionment statute violated substantive due process. It concluded that the statute unreasonably mandated an allocation of percentages of negligence to nonparties without any kind of procedural safeguard. In *Plumb v. Fourth Judicial District Court, supra,* the Montana Supreme Court noted that the new amendments to the apportionment statute did not provide any opportunity for an unnamed third person to appear and defend himself or herself and concluded that the statute violated the right of substantive due process.

*Best v. Taylor Machine Works, supra,* involved an Illinois statute containing a provision stating that a tortfeasor must receive a credit against liability to the plaintiff in an amount equal to the amount of contribution, if any, for which the employer is found to be liable to that tortfeasor, even if the amount exceeds the employer's liability under the state's workers' compensation act or workers' occupational diseases act. The court struck the provision as either arbitrary, unconstitutional, or entirely superfluous.

We note first that at least one court has specifically rejected the rationale of the Montana cases. *See Haff v. Hettich,* 593 N.W.2d 383 (N.Dak.1999). Further, neither *Newville v. State, supra,* nor *Plumb v. Fourth Judicial District Court, supra,* addressed apportionment involving a non-party employer immune from suit under the workers' compensation laws of the state. As to *Best v. Taylor Machine Works, supra,* the Colorado statutory scheme does not contain a comparable provision.

Colorado's apportionment statute provides for notice to the plaintiff of the designation of a non-party early in the proceeding. Implicit in this procedure is that the burden is on the designating defendant to establish the nonparty's fault. In addition, the Workers' Compensation Act provides a substituted form of relief. The Act is a comprehensive and predictable scheme that speedily resolves questions of job-related injuries and fixes employer liability in a way that allows employers to obtain insurance. *Williams v. White Mountain Construction Co.,* 749 P.2d 423 (Colo.1988). This formula allows all parties involved to determine with some degree of certainty the amount of compensation to which the worker is entitled. *Bellendir v. Kezer, supra.*

Consequently, we reject plaintiff's constitutional challenges to § 13–21–111.5.

### B.

We also disagree with plaintiff that, because the jury verdict exceeded her offer of settlement, she is entitled to $14,945 in costs for copying, long distance telephone and facsimile, messenger services, postage,

and legal research, which were incurred for the benefit of this litigation.

On March 12, 1996, plaintiff filed an offer of settlement pursuant to § 13–17–202(1)(a)(I), C.R.S.1999, for $350,000, which defendant rejected. Plaintiff recovered a judgment in excess of her offer. Although plaintiff filed a bill of costs seeking $254,513, the trial court awarded her $114,005.88.

A plaintiff is entitled to costs if "the plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in excess of the amount offered...." *See* § 13–17–202(1)(a)(I).

■ However, a trial court need only award actual costs that are reasonably incurred by a party under § 13–17–202. *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993).

■ Further, an award of actual costs in an amount less than what a plaintiff has claimed as its actual costs is not *per se* error. *Scholz v. Metropolitan Pathologists, P.C., supra.*

Here, with record support, the trial court found that plaintiff made certain choices related to costs that were not necessarily reasonable. It also awarded her $4,482.64 in photocopying expenses.

Thus, we perceive no abuse of discretion.

Accordingly, the judgments are affirmed.

Chief Judge HUME and Judge CRISWELL * concur.